STATE OF TENNESSEE, Plaintiff in Error,

*v.*

JOSEPH M. CALVERT, Defendant in Error.

410 S.W.2d 907.

(*Nashville,* December Term, 1965.)

Opinion filed October 17, 1966.

GEORGE F. MCCANLESS, Attorney General, ROBERT F. HEDGEPATH, Assistant Attorney General for defendant in error; and HARRY G. NICHOL, District Attorney General, GALE ROBINSON and JAMES R. OMER, Assistant Dis-

trict Attorneys General, Nashville, prosecuted the case for the State in the trial Court.

JAMES W. RUTHERFORD, STOCKELL, RUTHERFORD & CROCKETT, Nashville, of counsel, for defendant in error.

MR. SPECIAL JUSTICE WILLIAM J. HARBISON delivered the opinion of the Court.

In these cases defendant Joseph M. Calvert, and others, were indicted by the Davidson County Grand Jury for stealing a quantity of old, antique and rare coins, and defendant Calvert was separately indicted for theft of certain jewelry. By motion timely filed, prior to the trial of the two cases, defendant Joseph M. Calvert challenged the legal sufficiency and execution of a search warrant by which certain evidence had been obtained, and sought to have the evidence thereby obtained suppressed as provided in T.C.A. sec. 40-519. In

said motion, or petition, it was alleged that the search warrant was executed at a time when the said Joseph M. Calvert was not at home, and when no other member of his family was at home. It was alleged that said warrant was served upon a next door neighbor, who was not his landlady, was not related to him, and was in legal effect a stranger to him. It was, therefore, alleged that the search warrant was not legally served upon anyone, had no effect, and could not be used, nor could any evidence obtained by its use be admitted in the trial of the case. There was also a general allegation that the search warrant was not otherwise sufficient upon its face.

The trial judge heard evidence on two occasions concerning the matters raised in the petition filed on behalf of Calvert, and after taking the case under advisement entered a decree to the effect that the search warrant was illegally executed. Accordingly, he granted the petition filed on behalf of Calvert to suppress the warrant and all evidence obtained by its use and directed that the properties seized under the warrant be restored to Calvert. In his decree the court expressly relied upon T.C.A. sec. 40-519(5), which provides that any person aggrieved by an unlawful search and seizure may move the trial court for a return of the property and to suppress its use as evidence when the search warrant was illegally executed.

From the action of the trial court in sustaining the motion of Calvert, the State excepted, filed a motion for a new trial, and upon the overruling of same, the State duly perfected its appeal to this Court.

At the outset, we are met by a motion on behalf of the defendant Calvert to strike the bill of exceptions on the ground that the search warrant, which was the subject

538

of the petition below, was not copied into the bill of exceptions and is, therefore, not properly before the Court. Defendant relies upon the case of *Fine v. State*, 183 Tenn. 117, 191 S.W.2d 173 (1945). In that case it was held by this Court that a search warrant is not part of the technical record in a criminal case and that it is simply a part of the evidence which must be duly identified and authenticated by the trial judge and made a part of the bill of exceptions in order to be reviewed on appeal.

■ In the present case, unlike the situation in the *Fine* case, the search warrant is not only attached to and made a part of the technical record in the case, but it expressly bears on its face a notation by the trial judge that it was identified on March 18, 1966, and bears the signature of the trial judge. The transcript of evidence, which is filed in the case as a bill of exceptions, was approved and signed by the trial judge also on March 18, 1966. Therefore, although the search warrant is not physically bound up with the bill of exceptions in the present case, it appears to have been sufficiently authenticated by the trial judge to be considered by this Court as a part of the bill of exceptions. Accordingly, the motion to strike the bill of exceptions and to dismiss the appeal is overruled.

■ Further, as pointed out by the State in its brief, no question appears to have been made in the court below concerning the regularity of the issuance of the search warrant, and the only questions presented deal with the return made on the warrant by the officer and with the actual execution or carrying out of the search itself. All these matters sufficiently appear in the transcript of testimony, or bill of exceptions, so that the questions raised on this appeal would be sufficiently before the Court

even if the search warrant itself had not been so identified and authenticated by the trial judge as to be considered as a part of the bill of exceptions.

Turning to the questions presented on the merits, it appears that the defendant Calvert insists that a search warrant may not be executed and a search carried out on vacant premises, and he further insists that the return of the officer involved in the present case was defective. On each of these grounds he seeks to have the search warrant quashed and the evidence obtained ruled inadmissible and returned to him. We think that under the facts of this case both contentions are without merit, and that the judgment of the trial court must be reversed.

There is no dispute in the record concerning the facts. The warrant in question was obtained on April 5, 1965, from a Judge of the General Sessions Court of Davidson County, Tennessee, upon affidavit and information furnished by one Archie Summers, a detective of the Metropolitan Police Force in Nashville, Tennessee. While there was a general allegation in the petition filed below that the warrant was insufficient upon its face, the trial judge did not so find and we are of the opinion that this contention has no merit. The warrant appears to have been regularly issued, and all of the statutory requirements concerning the preparation and issuing the same, including those set out in T.C.A. sec. 40-518, appear to have been met, so far as the record before us discloses. The warrant authorized the search of the person of Joseph Miller Calvert and the premises occupied by him, located and described as being property at 1609 Citation Drive, in Nashville, Tennessee. The warrant described the house located on said premises, and gave directions

as to how the premises could be reached. Mr. Summers testified that in company with two other detectives he went to the premises with the search warrant and found no one at home. He then inquired of a lady who lived next door, Mrs. Eva Duffey, whether she knew where the occupants of 1609 Citation Drive were. Mr. Summers testified that he advised Mrs. Duffey that the officers had the warrant and had authority to enter the house whether the occupants were there or not. Mrs. Duffey stated that she had a key and would open the door for the officers, and she accordingly did so. Mr. Summers testified that he did not read the warrant to Mrs. Duffey or to any other person, and did not actually serve it upon anyone. Finding no one at home, the officers entered the house, searched the premises, and left a copy of the warrant in the living room lying on a television or hi-fi set. In the course of the search of the premises, the officers found the incriminating evidence later sought to be suppressed.

On the same date, April 5, 1965, Mr. Summers made a return on the back of the warrant. He simply filled in a printed form of return, which stated that the warrant had been executed ''by searching the person(s) and property herein described * * *.'' He listed in detail the property which had been seized and taken from the premises and presented to the General Sessions Court which had authorized the search. Mr. Summers admitted that the return was in error insofar as it purported to show a search of the person of Mr. Calvert, or anyone else. He insisted, however, that he did search the property described in the warrant and there is no contrary evidence.

Mrs. Duffey, called as a witness on behalf of the defendant Calvert, testified that she lived at 1607 Citation Drive, next door to the Calvert house. She stated that

a Captain and Mrs. Bosley owned the property at 1609 Citation Drive and were renting the same to the Calverts. She said that she had a key to the property, which had been furnished to her by the Bosleys. She recalled the search made of the premises by Mr. Summers and the other detectives, and corroborated their testimony that they told her they had a search warrant, and that they would break down the door if necessary to search the premises. She said that she did not want to see the property damaged, and accordingly unlocked the door and admitted the officers. She contradicted the officers as to whether the warrant was read to her, stating that they required her to hear the warrant read and to act as a witness to the search. She said they did not give her a copy, however, but that they left a copy on the hi-fi set in the living room of the premises at 1609 Citation Drive. Her memory was that the search occurred on April 6, 1965, instead of April 5.

The defendant Calvert testified that he was not at home at the time of the search and had not been in the premises since April 3, 1965. Apparently he had left home on Saturday, April 3, 1965, with the intent of not returning to these premises, and in fact never had returned to them when he testified at the hearing in December, 1965. He said that his wife also had moved out of the premises, although some of her belongings were still there. He, himself, was visiting an uncle in Springfield, Tennessee, according to his testimony, on April 5, 1965. Some of his belongings apparently remained in the premises, but they were moved out of the premises by his mother and his wife a few days after he left. Calvert testified that his lease on the property did not expire until April 23, 1965, but he and his wife vacated the

property prior to the expiration of the lease and obtained some refund of the rent. He apparently had left the premises on April 3, 1965, leaving some of his clothing and belonging there. (The house was rented furnished from the Bosleys.) Mr. Calvert testified that he had left the property because "the police and detectives were running over there, in and out, and stopping everybody that pulled in the drive."

The mother of Mr. Calvert testified that her son had moved out of the premises before the search was made, and that she had personally carried him to visit his uncle on April 3, 1965. The wife of the defendant was staying with her at the time. A few days after the search had taken place, Calvert's wife and mother went to the premises and found a copy of the search warrant on the hi-fi set in the living room.

█ It is insisted by the State that the defendant may not question the validity of the search since he had abandoned the premises two days before the search was made. The States relies upon the case of *Dobbins v. State,* 206 Tenn. 59, 332, S.W.2d 161 (1960), and cases there cited in support of this proposition. It is true that under the general law of the State

* * * when one disclaims interest in the premises or possessions searched or in the articles seized he cannot question the legality of the search and seizure and it necessarily follows there can be no valid objection to evidence obtained by such search. *Bowman v. State,* 211 Tenn. 38, 41, 362 S.W.2d 255, 257 (1962).

We do not believe that this position of the State is well taken, however, in view of the uncontradicted testimony of the defendant that his possessions and belongings

were still in the searched premises, and that he claimed possession or ownership of the articles seized. Under these circumstances, it appears that the defendant would have sufficient interest in the validity of the search to be in position to challenge the same.

It seems to be the position of the defendant Calvert, and also it seems to have been the holding of the trial court, that because the warrant in question was not actually served upon the defendant, or upon any other person, but was simply left in the premises, that the warrant was "illegally executed" within the meaning of T.C.A. sec. 40-519.

It is true that by Chapter 241 of the Public Acts of 1959, now codified as T.C.A. sec. 40-518, it is required that all magistrates or other officials issuing search warrants shall prepare an original and two exact copies of the same. One copy is to be kept by the issuing official as part of his records and one "shall be left with the person or persons on whom said warrant is served." The statute further provides that "[t]he original search warrants shall be served and returned as provided by law." The statute then requires that the person issuing the warrant shall endorse thereon the hour, date and name of the officer to whom the warrants were delivered for execution, and an exact copy of such warrant and endorsement thereon is made admissible in evidence. Failure to comply with this statute is said to make any search conducted under the warrant an illegal search and seizure.

The question is squarely presented, therefore, as to whether or not officers having in their possession a valid search warrant must serve the same upon the accused or someone else in possession of the premises to be searched. In other words, the question is raised as to whether or

not officers may search vacant premises, when neither the accused nor anyone else may be found upon whom to serve the warrant.

It is provided by T.C.A. sec. 40-509 that:

To execute the warrant, the officer may break open any door or window of a house, or any part of a house, or anything therein, if after notice of his authority and purpose, he is refused admittance.

It was held by this Court in the case of *Collins v. State,* 184 Tenn. 356, 199 S.W.2d 96 (1947), that when officers find no person in charge of premises on whom notice of a search might be served, they may validly enter the premises, by force if necessary, to execute the search warrant, without first demanding admittance. In that case officers went to premises which were vacant, having first obtained a valid search warrant. They pushed or forced open a rear door and made entry. Since the defendant was not present, no notice was given to him and no demand was made on him for permission to enter as provided in T.C.A. sec. 40-509. The Court rejected the argument that notice to the defendant is a prerequisite in all cases before a forcible entry may be had. In commenting upon the unreasonableness of such a position, the Court said:

Surely one may not unlawfully store in his house a quantity of intoxicating liquor, or stolen goods, and lock or bar the doors, and conceal himself within, or absent himself from the house, as here, so he cannot be reached to serve papers on him, and thus prevent seizure of this property by the law. *Collins v. State,* 184 Tenn. at 361, 199 S.W.2d 98.

■ In 79 C.J.S. Searches and Seizures sec. 83, p. 905, the following statement is made:

Since the service of a warrant for the search of premises is sufficient when made at the place designated in the warrant, it is not necessary to the validity of a search and seizure that it be made in the presence of accused. Accordingly, the effect of the warrant cannot be avoided by accused by absence when the warrant is executed; nor is it necessary that service of the warrant be made on the owner of the premises when he is in jail. Moreover, where accused is not present at the time of the search of his residence, it is not necessary that a copy of the warrant be served on anyone or posted on the door; and the fact that a copy of the warrant was left on his bed does not invalidate the search.

■ We are of the opinion that these principles are controlling here. Inasmuch as the officers in the present case found the premises vacant, they clearly had authority to enter the premises forcibly if necessary, and since neither the accused nor anyone else was in apparent possession of the same, the officers were privileged to carry out their search in a lawful manner. We do not construe the provisions of T.C.A. sec. 40-518, concerning the leaving of a copy of the warrant with the person served, to prevent a search when no person is present or in occupancy of the premises to be searched.

The final question raised by the defendant below, and the one upon which the trial judge apparently sustained the motion to suppress, deals with the allegedly defective return made upon the search warrant by the investigating officer, Summers. It was contended below that because the printed return stated that "the person(s) and

property herein described" had been searched, when, in fact, no person at all had been searched, the return was fatally defective, the search unlawful and unreasonable, and the warrant and evidence obtained thereunder subject to being suppressed.

■ As stated, T.C.A. sec. 40-519 authorizes the suppression of a search warrant and of any evidence obtained thereunder upon several grounds, the only applicable one in the present case being that "the warrant was illegally executed." It is apparently contended that an allegedly improper return amounts to an "illegal execution" of the warrant. With this position we are not prepared to agree. This Court held in the case of *Bowman v. State,* supra, that the return of an officer upon a search warrant is a mere ministerial function and does not affect the validity of the warrant and the execution thereof by the officer. In that case an officer had obtained a search warrant and executed it within five days of its issuance, but failed to make a return thereon within five days after the date of the warrant as required by T.C.A. sec. 40-507. The statute just referred to provides that if a warrant is "not executed" within the five day period, it is void. This Court stated:

The warrant in the case at bar was certainly executed within the period of five days; that is, the search was made and conducted within that time. The failure of the officer to make the return within the five day period was merely a failure on his part to carry out a ministerial duty. His failure to perform this simple act could not and did not in any way affect the validity of the warrant and the execution thereof by the officer. The proof in fact showed that the officer did execute the warrant within the period of five days and that the

preliminary hearing was had on the fifth day after the issuance of the warrant. *Bowman v. State,* 211 Tenn. at 43, 362 S.W.2d at 257.

■ The Court accordingly held that any irregularities in regard to the return made by the officer do not render the evidence secured thereunder inadmissible. See also *Bragg v. State,* 155 Tenn. 20, 290 S.W. 1 (1927).

■ These cases are controlling here. As stated, there is no contention that the officers in the present case acted unreasonably or beyond the scope of the search authorized by a valid warrant which had been obtained by them. Under these circumstances, the mere fact that the printed return indicated that there had been a search of "persons(s)" as well as of property, does not, in our opinion, render the search illegal or unreasonable, nor the evidence obtained thereby inadmissible.

The judgment of the trial court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.