ARTHUR POOLE, BERNICE NORTH and ROBERT
NORTH, Plaintiffs in Error, v. STATE OF
TENNESSEE, Defendant in Error.—467 S.W.2d 826.

January 29, 1971.

Certiorari Denied by Supreme Court as to Bernice North and Robert
North May 3, 1971.

42

Edwin C. Harris, Madisonville, and William Felknor, Maryville, for plaintiffs in error.

David M. Pack, Attorney General, Robert H. Roberts, Assistant Attorney General, Nashville, Tom J. White, District Attorney General, Athens, Kendred A. White,

Assistant District Attorney General, Madisonville, for defendant in error.

MITCHELL, J. Arthur Poole, Bernice North and Robert North, who will be referred to as defendants or by name were indicted in the Criminal Court of Monroe County, Tennessee on May 5, 1969 in an indictment charging in the first count burglary of a dwelling house of J. O. Evans, in the second count charging larceny of a heater, cooler, shotgun shells and utensils of the value of $20.00, the personal property of J. O. Evans. The offenses were alleged to have been committed on the —— day of March, 1969.

The defendants were tried on September 24, 1969 and were convicted of petit larceny and the jury fixed their punishment at 90 days in jail and a fine of $250.00 each. The presiding Judge, Honorable James C. Witt pronounced judgment on the verdict of the jury from which the defendants appealed in error to this court.

The defendant Arthur Poole having been adjudged indigent prior to the trial was represented by court-appointed counsel, Honorable Edwin C. Harris. The defendants Bernice North and Robert North were represented by Honorable William B. Felknor, privately retained counsel.

The testimony of the State's witnesses showed that about March 12, 1969 a summer cabin of J. O. Evans in the Turkey Creek area of Monroe County had been broken into and the personal property mentioned in the indictment had been stolen. On that date two young men

had driven in their vehicle up in the vicinity of the Evans' cabin to cut wood. A light snow was on the ground and they saw tracks of an automobile made by mud or snow tires leading up to the cabin in question. They also saw tracks of a woman and two men and they started back to report their discovery. They met an oncoming automobile in a narrow road where they had to stop and exercise care in passing. These two witnesses saw a woman driving the car and a man seated on the front seat with her and another man in the back seat. They took the number of the 1967 Chevrolet automobile in which these three persons were riding and further investigation revealed that the car belonged to Robert North or Mrs. North and it was at their residence.

Officers went to the home of Robert North where they arrested him and his wife together with the defendant Arthur Poole. These two young men who had observed the automobile in the vicinity of the Evans' cabin identified Mr. and Mrs. North as the occupants of the front seat of the automobile. They were unable to identify Arthur Poole as they did not have a good opportunity to see the man who was in the back seat and therefore did not know him.

The officers also went to the Evans' cabin and confirmed the fact that it had been broken into. The prosecutor Evans gave the officer information about the articles that had been taken from his cabin.

The proof showed that the defendant Poole was the husband of Mrs. North's sister, who lived in Blount County, but Mr. and Mrs. North stated that the defendant

Poole had only been at their house a short time and that he came there for the purpose of repairing Mr. North's automobile. On March 13, 1969 a deputy sheriff obtained a search warrant and made a search of the defendant North's residence where he found some of the articles later identified by the prosecutor as having been taken from his cabin.

Prior to the trial the defendants filed a motion to suppress the evidence under the authority of T.C.A. 40-519. The trial court heard the motion and ruled that the search was legal and that the articles seized could be admitted in evidence in the case. When the defendant again attacked the search warrant on the trial, the court ruled that the matter had already been acted on by him on the motion to suppress and received in evidence the articles seized in the search to which the defendants objected.

Mr. and Mrs. North took the witness stand and testified in their own behalf and in behalf of the co-defendant Poole. They denied that they had been in the vicinity of the Evans' cabin on the day in question and denied that the young men saw them there in the automobile as they had testified. They testified they did not break into the cabin, that they were never in Mr. Evans' cabin and did not know anything about the burglary or of the larceny of personal property alleged to have been stolen. That they had never seen the electric heater before, that he did not have it in his house that if it was there somebody planted it there. That they did not steal anything from Mr. Evans. Mr. North further testified that the water jug and the electric heater were not in his house if it was there, the officer must have put it there.

They also testified that the defendant Poole was Mrs. North's brother-in-law and that he had just arrived at their house a short time before the officers came to arrest them and that he had come there for the purpose of working on the transmission of Mr. North's car at Mr. North's request. The defendants relied on an alibi and contended that they had been engaged on the day in question in delivering coal to several different houses. The owner of the coal truck and some of the customers corroborated the testimony of the defendants in this respect. This proof of their alibi did not preclude the possibility that the defendants could have been at the scene of the burglary at the time in question.

The assignments of error made by the defendant Arthur Poole have been summarized by the Attorney General in his brief as being an attack on the sufficiency of the evidence as to him and that the search of North's residence was unlawful. We do not think the defendant Poole is in a position to question the validity of the search of the North residence. In Templeton v. State, 196 Tenn. 90, 264 S.W.2d 565, it was held:

"The protection extended by the Constitution of security in person, houses, papers and effects inures to protection of person in possession only and does not extend to third persons. Allen v. State, 161 Tenn. 71, 29 S.W.2d 247. Therefore, the invasion by the officers in this case of the private property belonging to or in the possession of Thomas Bowles was not a violation of the constitutional protection against unlawful searches and seizures of the defendant."

■ The proof against Arthur Poole is wholly circumstantial. The State's witnesses who identified Mrs. Bernice North as the driver of the car and her husband Robert North on the front seat with her in the vicinity of prosecutor Evans' cabin on the day in question, were unable to identify the third person on the back seat of the car, so they did not know who was with the defendants Mr. and Mrs. North. The only other circumstance which might connect Poole with the offense charged was his presence in the home of the Norths at the time of the arrest.

The evidence is not sufficient to support a verdict of guilty of petit larceny as to Arthur Poole. The evidence preponderates against his guilt and in favor of his innocence.

In the case of Arthur Poole the judgment is reversed and remanded for a new trial on the ground that the verdict is not warranted by the proof.

We will now consider the assignments of error made by the defendant, Robert North and his wife Mrs. Bernice North, in the order in which they have been summarized in the brief of the Attorney General.

The first assignment of error is that the court erred in overruling the motion filed by the defendants to suppress for the use as evidence any property seized from him or their home in Monroe County and failed to suppress the search warrant used in this case.

Prior to the trial the defendants filed a motion to suppress the evidence and the search warrant. The trial

judge heard the motion and the evidence offered in support of it. The following grounds were set out in the motion to suppress:

"1. Parts of said property were seized without a warrant.

 2. The search warrants used were insufficient on the face of said warrants.

 3. The property seized was not that described in the warrants.

 4. There was not probable cause for believing the existence of the grounds on which the warrants were issued.

 5. Said search warrants were issued on false information known by both the affiant and the issuing magistrate to be false."

On the hearing of the motion to suppress the defendants introduced Alfred Moser a deputy sheriff who had made an affidavit to and obtained the search warrant in question, issued by Charles Hall, Justice of the Peace.

After showing by Alfred Moser that he executed the affidavit which was a part of the search warrant, defendants' counsel then asked him if he did in fact receive information from John Doe a responsible and reliable citizen of said State and county whose name he had that day disclosed to the judge. The District Attorney objected. Defense counsel insisted he was entitled to have an answer to his question that "it states affirmatively that he

received information from one John Doe, who is named in the search warrant, we respectfully submit to the court that if in fact there was no such person as John Doe then he could not have received the information and this is a false affidavit.''

The court ruled that it was not necessary to put on proof on that subject, that it was a question of law, that nobody insisted there is a man named ''John Doe'', that it was just a question of whether or not you can use John Doe in that fashion.

■ On the John Doe question Garner v. State, 220 Tenn. 680, 423 S.W.2d 480, held:

''The defendant attempts to distinguish the Seals case from the present case, in that 'John Doe, alias' was used in the former, but only 'John Doe' in the latter. He urges that without the 'alias', John Doe is to be considered the specific person in charge of the premises. It is a matter of common knowledge that when 'John Doe' is used in a search warrant, case report, textbook, or other legal document, it refers to an unknown or nonexistent person. The addition of the word 'alias' is not essential to convey this meaning.''

■ The witness Moser testified, under questioning by defense counsel, that his informant did not inform him that he had been in Robert North's house and seen the property in question.

The court stated that this was a question for the issuing magistrate to determine and he did not think he would have a right to determine it. The trial court de-

clined to permit the defendant to impeach or contradict the affidavit, in an effort to show that the search warrant was issued without probable cause, and held that the question of probable cause was a matter for the judicial decision of the issuing magistrate. In Owens v. State, 217 Tenn. 544, 399 S.W.2d 507 the Court said:

"While it is indisputable that the affidavit must contain the nature of the informant's information, it is, according to Gallimore v. State, 173 Tenn. 178, 116 S.W.2d 1001 (1938), nevertheless the office of the magistrate issuing the warrant to determine himself what particular or specific facts will justify his exercise of discretion—so long as there is some material evidence before him. Lea v. State, 181 Tenn. 378, 181 S.W.2d 351 (1944), reiterates this point.

It is clear, then, that the facts stated in the affidavit, i.e., the facts upon which the affiant bases his reasonable belief, are not subject to contradiction at the trial for the purpose of suppressing the evidence secured by means of the warrant. This is so because the magistrate determines the verity of the facts, at least he is supposed to, before he issues the warrant. He performs a judicial act which is not subject to review unless there are no material facts upon which he based his discretion. O'Brien v. State, 205 Tenn. 405, 326 S.W.2d 759 (1959); Solomon v. State, 203 Tenn. 583, 315 S.W. 2d 99 (1958).

The United States Supreme Court recognized, in the case of Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, (1964), that an affidavit

could not be based on the mere conclusions of an informant, something the Supreme Court of Tennessee has recognized for at least forty years. Nevertheless, since Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), announced that the standards determining probable cause are the same under the Fourth and Fourteenth Amendments to the United States Constitution, it is of interest to examine the latest United States Supreme Court decisions on probable cause involving federal search warrants.''

Solomon v. State, 203 Tenn. 583, 315 S.W.2d 99 held:

''By other assignments it is contended that the court erred in not allowing the defendant to show in the Criminal Court that the search warrants were issued without sufficient probable cause. No authority is cited for this insistence and our cases uniformly hold the other way. If the affidavit for warrant is regular on its face showing that there was material evidence before the magistrate supporting his action, then, except for fraud or collusion, his action is not subject to review. Reed v. State, 162 Tenn. 643, 39 S.W.2d 749; and Gallimore v. State, 173 Tenn. 178, 116 S.W.2d 1001. These two search warrants appear to be regular on their face as above suggested and do not indicate any wilful failure to exercise discretion and there is no indication of fraud or collusion. Thus the assignments must be overruled.''

O'Brien v. State, 205 Tenn. 405, 326 S.W.2d 759 held:

''It is very forcefully argued by the plaintiff in error that the trial judge erred in refusing to suppress the evidence obtained by the search warrant. The argu-

ment is made that the warrant is invalid and void because it was made on information and belief without disclosing the nature and source of the information. It is also argued that the information disclosed was insufficient to justify the issuance of the warrant. In support of this argument the plaintiff in error relies upon this case of Elliott v. State, 148 Tenn. 414, 256 S.W. 431. We do not think that this case is in point.

This Court has held on numerous occasions that contests about facts concerning the issuance of search warrants must be determined by the issuing magistrate. Section 40-514, T.C.A., would certainly indicate as much. In Gallimore v. State, 173 Tenn. 178, 116 S.W.2d 1001, 1002, this Court said:

"It is for the magistrate himself to determine, whether in any case before him, it is essential that the name of an informant, otherwise shown to him to be a reliable person, shall be given.'

The tenor of the opinion otherwise is as to other facts herein argued is the same as the quotation above. See also in support of this statement, Solomon v. State, 203 Tenn. 583, 315 S.W.2d 99; Zimmerman v. State, 173 Tenn. 673, 122 S.W.2d 436.

In determining whether or not probable cause exists for the issuance of search warrants, the issuing magistrate performs a judicial act which is not subject to review by the court unless probable cause is not shown on the face of the warrant. The falsity of averments made in an affidavit, made prior to the issuance of the warrant, cannot be impeached by oral testimony at the

trial. Solomon v. State, *supra;* Goss v. State of Maryland, 198 Md. 350, 84 A.2d 57, and Troxell v. State, 179 Tenn. 384, 166 S.W.2d 777. It seems to us that probable cause is shown in the affidavit which constituted some two or three pages covering all the items hereinbefore referred to. We think that probable cause is shown by this affidavit and it cannot be collaterally attacked in the trial after the return of the indictment."

■ The defendants further insisted the property for which the search was made was not adequately described with particularity that "one electric heater, one orange colored ice jug, 16 gauge shotgun shells, 22 shells, and so forth" was too general in its nature to meet the statutory requirements.

We think, as did the trial judge, that these items were about as particularly described as such commodities can be. Such merchandise is difficult to describe. It may be said that the heater should be described as a "G. E." or a "Westinghouse", it could also be argued there are thousands of G. E. heaters and thousands of Westinghouse heaters. Shotgun shells might be described as Remington, Western or Winchester or by name of the manufacturers, still it could be argued there are untold numbers of Winchester, Remington or "Peters" shotgun shells 12's 16's, and 20's.

At the conclusion of the hearing on the motion to suppress the court overruled the motion and asked counsel, "Have you got anything else." Counsel replied, "I don't guess it would matter Your Honor, it looks like I'm going to be overruled anyhow."

■ The defendants' second assignment of error was to the effect that the trial judge erred in holding that the issuing magistrate having determined that there were grounds for issuing the search warrant precluded the trial judge from inquiring into or hearing any evidence on the question of probable cause for believing the existence of the grounds on which the warrant was issued and in refusing to hear any evidence of fraud or collusion.

We hold that this assignment of error is without merit. On the authority of Solomon v. State, 203 Tenn. 583, 315 S.W.2d 99, *supra;* O'Brien v. State, 205 Tenn. 405, 326 S.W.2d 759; and Garner v. State, 220 Tenn. 680, 423 S.W.2d 480, *supra.*

■ The defendant's third assignment of error is that the court erred in refusing to exclude all evidence seized under the search warrant because the search warrant failed to comply with T.C.A. 40-518, requiring a copy be given to the person searched.

The record shows that no one was at home when the officer searched the residence of the defendants, Mr. and Mrs. North under the authority of the search warrant in this case, and seized the articles of personal property alleged to have been stolen.

There was no one present on whom he could serve the warrant or with whom he could leave a copy as required by T.C.A. 40-518.

We find this assignment without merit on the authority of State v. Calvert, 219 Tenn. 534, 410 S.W.2d 907 where the Court said:

"It was held by this Court in the case of Collins v. State, 184 Tenn. 356, 199 S.W.2d 96 (1947), that when officers find no person in charge of premises on whom notice of a search might be served, they may invalidly enter the premises, by force if necessary, to execute the search warrant, without first demanding admittance. In that case officers went to premises which were vacant, having first obtained a valid search warrant. They pushed or forced open a rear door and made entry. Since the defendant was not present, no notice was given to him and no demand was made on him for permission to enter as provided in T.C.A. sec. 40-509. The Court rejected the argument that notice to the defendant is a prerequisite in all cases before a forcible entry may be had. In commenting upon the unreasonableness of such a position, the Court said:

Surely one may not unlawfully store in his house a quantity of intoxicating liquor, or stolen goods, and lock or bar the doors, and conceal himself within, or absent himself from the house, as here, so he cannot be reached to serve papers on him, and thus prevent seizure of this property by the law. Collins v. State. 184 Tenn. at 361, 199 S.W.2d 98."

\* \* \* \* \* \*

"We do not construe the provisions of T.C.A. sec. 40-518, concerning the leaving of a copy of the warrant with the person served, to prevent a search when no person is present or in occupancy of the premises to be searched."

 The defendant's fourth assignment of error is to the effect that the court erred in permitting the State to introduce evidence seized from the home of the defendants, Mr. and Mrs. North, without requiring the State to prove a right to search, without permitting the defendant to question the State's proof of a right to search, or without permitting the defendants to put on any proof as to the illegal search and seizure from their home and without conducting any hearing when the introduction of such evidence was objected to by the defendant.

The trial judge had conducted a hearing on the motion to suppress the evidence and the search warrant. An examination of the grounds in the motion to suppress will show that the matters set out in his fourth assignment were considered by the Court on the hearing of the motion to suppress after a lengthy argument by counsel and were overruled therefore the trial judge held he had already passed on these questions.

We find the trial judge did not abuse his discretion in refusing to hear these matters again.

The defendant contends the description of the property searched is inadequately described in the warrant. The court held it was described with sufficient particularity. According to the proof in the case the officer who searched on the occasion in question, had searched this same house the day before he found the electric heater, water jug and cartridges filed in this case. It was held in Garrett v. State, 194 Tenn. 124, 250 S.W.2d 43 that:

"The search warrant is assailed on the ground that the description is inadequate. It is contended that the

58

house had five rooms instead of four. The description is sufficient if it enables the officer to locate with reasonable certainty the place to be searched. The description here met this requirement by directing the officer to search the house of J. F. Garrett on the Bells Road in Madison County.''

It was also held in O'Brien v. State, 158 Tenn. 400, 14 S.W.2d 51, that:

''It is a requirement that the search warrant sufficiently describe the premises to be searched. In this case, the warrant directed the officer to search the dwelling house of James O'Brien on TeCoy Road in the 9th Civil District, Knox County, Tenn. According to numerous authorities, such a description is held sufficient because it enables the officer to whom it is directed to locate with reasonable certainty the place to be searched. Olson v. Haggarty, 69 Wash. 48, 124 P. 145; Blackburn v. Commonwealth, 202 Ky. 751, 261 S.W. 277; Little v. Commonwealth, 205 Ky. 55, 265 S.W. 433; State v. Sheehan, 111 Me. 503, 90 A. 120; McSherry v. Heimer, 132 Minn. 260, 156 N. W. 130.''

The description of the premises searched in the instant case is:

''Robert North who resides in or occupies and is in the possession of the following described premises, viz; a one story frame house, five rooms and bath, 2½ miles from city limits of Madisonville on Ball Play Road property of Dillon Griffith in Monroe County, Tennessee.''

We find that the search warrant was properly issued and that the search under it was valid and legal and that the evidence was admissible.

Assignment of error number five is that the court erred in permitting the jury to consider items seized from the home of the defendants North against any of the defendants except the defendant Robert North.

In considering this assignment of error we cannot overlook the testimony of the two young men who said they saw the defendants together in their automobile in the vicinity of the burglarized cabin just hours before the stolen goods were found in the house in which the defendants were then living. From this the jury evidently concluded the defendants had transported the stolen property in their car to the house where it was afterwards found.

This Court in Smith and Shipley v. State, Tenn.Cr. App., 451 S.W.2d 716, in an opinion by Presiding Judge Mark Walker upheld a conviction of larceny on evidence of unexplained possession of recently stolen goods in the house where defendants Shipley and Smith were living together as man and wife, though not lawfully married.

This assignment of error is overruled.

Assignment of error number six was that there was no evidence to sustain the verdict of the jury that the defendants were guilty of petit larceny.

The proof, which was evidently accepted by the jury, was that the stolen property was found in the residence of the defendants Robert North, and his wife Bernice

North and there was no satisfactory explanation of its presence.

"This unsatisfactorily explained possession of most recently stolen property would have supported a conviction for larceny." Tackett v. State, 223 Tenn. 176, 443 S.W.2d 450.

In Peek v. State, 213 Tenn. 323, 375 S.W.2d 863, the Court said:

"In this State we follow the generally approved rule that proof of possession of recently stolen goods gives rise to the inference that the possessor has stolen them. 2 Wharton, Criminal Law, 31, sec. 411 (1954); Hughes v. State, 27 Tenn. 75, 76-77 (1847); Cook v. State, 84 Tenn. 461, 464, 1 S.W. 254 (1866). A good statement of this rule is found in Shaw v. State, 1 Tenn.Cas. 77, 78 (1858), where the Court said:

"Greenleaf sec. 34, states the rule to be, 'That the possession of the fruits of crime recently after its commission' raises a presumption of guilt, prima facie only, of course. This single fact, if unexplained by direct evidence, the attending circumstances, good character, or otherwise, will be conclusive."

Secondly, this Court has held that after the corpus delicti (the theft in this case) has been proved beyond a reasonable doubt, circumstantial evidence may itself be sufficient proof on which to base a conviction. Smith v. State, 205 Tenn. 502, 522, 327 S.W.2d 308 (1958)."

 Under this assignment of error we are bound by the well-known rule that the verdict of the jury is conclusive as to the credibility of the witnesses. Also that an accused convicted in the Trial Court comes to this Court under a presumption of guilt and under the burden of showing that the evidence preponderates against the verdict below and that, assuming the credibility of the witnesses, to have been settled by the verdict of the jury, approved by the Trial Judge, we can only review the evidence for the purpose of determining whether it preponderates against the verdict as is described in Cooper v. State, 123 Tenn. 37, 56-61, 138 S.W. 826.

We do not think the defendants have carried the burden of showing that the evidence preponderates against the verdict and in favor of their innocence, therefore the assignment of error is overruled.

 Though not assigned as error we hold that the jury was without legal authority to impose a $250.00 fine or any fine upon the defendants in this case. T.C.A. 39-4205 Cumulative Supplement 1970 fixing the punishment for petit larceny and receiving and concealing stolen goods, provides:

> "In all cases of petit larceny, and in all prosecutions for receiving stolen goods under the value of one hundred dollars ($100), the court may in the event of conviction, on the recommendation of the jury, substitute, in lieu of punishment in the penitentiary, imprisonment in the county jail or workhouse; provided, however, that on demand of the defendant seasonably made, the trial jury shall as part of their verdict assess all

punishment for such offense and may, in lieu of punishment in the penitentiary, substitute imprisonment in the county jail or workhouse for any time less than one (1) year. (Code 1858) section 4691 (deriv. Acts 1829, ch. 23, section 26); impl. am. Acts 1883, ch. 188, section 2; Shan., section 6555; mod. Code 1932, section 10934; Acts 1959, ch. 11, section 1; 1963, ch. 190, section 1.''

We consider it our duty to correct the judgment, therefore we annul and vacate the fine of $250.00 imposed upon each of the defendants, Robert North and Bernice North, and thus modified the judgment as to them is affirmed.

As to Arthur Poole, the judgment is reversed and remanded for further proceedings.

We express our thanks to court-appointed counsel for the defendant Poole.

Walker, P. J. and Galbreath, J., concur.