**Stephen L. SQUIRES, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Jan. 16, 1975.

Certiorari Denied by Supreme Court
June 9, 1975.

Burkett C. McInturff and John S. McLellan, Kingsport, for plaintiff-in-error.

Milton P. Rice, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Kingsport, for defendant-in-error.

## OPINION

OLIVER, Judge.

Represented by retained counsel, Stephen L. Squires has perfected an appeal in the nature of a writ of error to this Court contesting his conviction of professional gambling, for which he was sentenced to pay a fine of $1,000 and to be imprisoned in the penitentiary for not less than one nor more than five years. TCA §§ 39–2032 and 39–2033.

The presentment upon which the defendant was tried was returned by the Grand Jury on 16 March 1973. By his first Assignment of Error the defendant complains that the trial judge overruled his motion to quash the presentment upon various grounds, including such indefiniteness, uncertainty and ambiguity that it did not furnish him with sufficient information to enable him to defend himself properly and would not protect him against double jeopardy; and also in overruling his motion to

dismiss the presentment upon the ground that the statutes under which it was laid were unconstitutional because of vagueness, indefiniteness and uncertainty.

■ To begin with, we do not agree that either the presentment or the statutes upon which it is based show infection with any such constitutional infirmity.

■ But beyond that, in making these contentions here the defendant confronts the fact that no order overruling those motions was made and entered upon the court's Minutes. Notwithstanding it appears in the Bill of Exceptions that the court overruled those motions, no order reflecting that action is shown to have been made and entered of record. When the Minutes of the trial court contain no entry showing any action upon a plea in abatement or a motion to quash an indictment, the established law of this State is that the appellate ·court cannot review the question raised by such plea or motion and is not permitted to look to recitals in the Bill of Exceptions to supply this defect. *Klaver v. State* (Tenn.Cr.App.1973), 503 S.W.2d 946; *Shye v. State* (Tenn.Cr.App.1974), 506 S.W.2d 169; *Jones v. State*, 197 Tenn. 667, 277 S.W.2d 371; *Gray v. State*, 194 Tenn. 234, 241–242, 250 S.W.2d 86.

The defendant's second Assignment, which we hold to be without merit, advances and argues his insistence that the trial court erroneously overruled his challenges to the legality of four search warrants and erred in admitting in evidence the seized gambling devices and equipment and component parts.

■ The first search warrant was issued January 5, 1973 as a "John Doe, alias" warrant (which term did not affect the legality of the warrant, *Garner v. State*, 220 Tenn. 680, 423 S.W.2d 480; *Renner v. State*, 187 Tenn. 647, 216 S.W.2d 345) and directed search of the two-compartment basement of the B & B Package Store in Kingsport, Tennessee. In March of 1973 the package store owner leased the basement to the Duran Corporation, whose offices were in the same building and which was a landholding company organized by the defendant and Herbert Patterson and Lester Peters for the purpose of establishing restaurants. Contrary to the defendant's insistence, the description of the premises contained in this search warrant was not defective or inadequate. The simple test of the legal sufficiency of a search warrant's description of the property to be searched is whether or not it will enable an officer to locate the place to be searched with reasonable certainty, *Hatchett v. State*, 208 Tenn. 399, 346 S.W.2d 258, and thus prevent the officer from searching the premises of one person under a warrant directed against those of another. *Lea v. State*, 181 Tenn. 378, 181 S.W.2d 351.

■ And he was not prejudiced by not being permitted to call and examine the affiant's informant (Lieutenant Sammy Poole of the Sullivan County Sheriff's Department whose name appeared in the affidavit) regarding his statement to the affiant, which was also set out in the affidavit. The facts stated in the affidavit upon which the affiant bases his reasonable belief are not subject to contradiction at the trial for the purpose of suppressing the evidence secured by means of the search warrant. *Owens v. State*, 217 Tenn. 544, 553, 399 S.W.2d 507. In determining whether or not probable cause exists for the issuance of a search warrant, the issuing magistrate performs a judicial act which is not subject to review by the Court if probable cause is shown on the face of the warrant. *O'Brien v. State*, 205 Tenn. 405, 326 S.W.2d 759; *Poole v. State*, 4 Tenn.Cr.App. 41, 467 S.W.2d 826. Besides, he substantially accomplished the same purpose by cross-examination of Officer Poole.

■ The complaint with reference to this presentment that T.C.A. § 40–518 was not complied with is untenable because the record shows that the defendant was not

present when the premises were searched and there is no evidence that either of the other incorporators or any employee was there at that time. *Poole v. State, supra; State v. Calvert,* 219 Tenn. 534, 410 S.W.2d 907.

We must reject the defendant's argument that the search was illegal because the basement was divided into two compartments by a partition which contained a closed and locked door and each compartment had a separate exterior entrance, and that the search warrant left it to the discretion of the officer executing it which of the separate premises he would search. Patterson testified that the partition was installed after the Duran Corporation leased the basement, that the Corporation stored some three truck loads of restaurant materials there and the defendant stored some machine parts in the basement. Under these circumstances the two compartments of the basement did not constitute multiple premises within the meaning of *Worden v. State,* 197 Tenn. 340, 273 S.W.2d 139. Nor was the search invalid because the warrant charged possession of one electric slot machine and the officers found one such machine in one compartment of the basement and 39 such machines and assorted repair parts and tools in the other.

The defendant assails a search warrant issued to Officer Sammy Poole on 19 January 1973, which directed search of Franklin Shipley's business house known as Bloomingdale Billiards located at a designated street number, for electronic gambling devices, the affidavit reciting that the affiant's belief was based upon information received from Franklin Shipley himself. We cannot agree with the defendant's assertion that this warrant's description of the premises to be searched was fatally uncertain and inadequate. Nor can we assent to the proposition that the defendant was denied his constitutional right to a fair and impartial trial when an FBI agent, who was an expert in gambling machines and devices, demonstrated the operation of one of the confiscated machines. We do not perceive how this demonstration of the machine with "lights flashing" and "bells whistling" and other "bizarre noises" coming therefrom created a "casino atmosphere" in the courtroom so as to prejudice the defendant's right to a fair trial.

Another search warrant attacked by the defendant is the one issued on 8 January 1973 upon the affidavit of Deputy Sheriff Mike Gardner, based upon his own personal observation of the premises in question on the same day, directing search for gambling devices in a house and outbuildings belonging to the defendant and one Ted Frazier described as being located on the east side of U.S. Highway 23 at its intersection with the Old Airport Road and directly across U.S. Highway 23 from a business house known as Cottage Antiques. We must reject the defendant's contentions that this warrant does not show probable cause for its issuance and that its description of the premises to be searched is fatally inadequate and vague and uncertain, and that it failed to show on its face that the issuing General Sessions Judge complied with T.C.A. § 40-518 by retaining a copy for his official records. That statute provides as follows:

"Copies of search warrants required—Indorsement—Evidence.—All magistrates, clerks of courts, judges and any other person or persons whomsoever issuing search warrants shall prepare an original and two (2) exact copies of same, one (1) of which shall be kept by him as a part of his official records, and one (1) of which shall be left with the person or persons on whom said warrant is served. The original search warrants shall be served and returned as provided by law. The person or persons as aforesaid who issue said warrants shall indorse the warrants showing the hour, date, and the name of the officer to whom the warrants were

delivered for execution, and the exact copy of such warrant and the indorsement thereon, shall be admissible in evidence in the courts. Failure to comply with this section shall make any search conducted under said warrant an illegal search and seizure."

The General Sessions Judge who issued this search warrant placed this endorsement on it:

"Issued in triplicate at 11:55 p. m. this 8th day of January, 1973 and delivered to Mike Gardner on this 8th day of January, 1973 at 11:55 o'clock p. m. for execution.

George H. Garrett
Judge of General
Sessions Court"

■ We agree with the State that while this statute requires the issuing magistrate to retain a copy of the search warrant, it does not require that compliance must be recorded on the warrant itself—however desirable it may be to do so. It will be noted that T.C.A. § 40–518 only requires the issuing official to endorse on the search warrant "the hour, date, and the name of the officer to whom the warrants were delivered for execution." *Talley v. State*, 208 Tenn. 275, 345 S.W.2d 867; *Evans v. State*, 209 Tenn. 453, 354 S.W.2d 263. Neither of the search warrants in this case was incorrectly endorsed by the issuing officer.

■ The remaining search warrant involved was issued by the General Sessions Judge on 29 January 1973 upon the affidavit of Deputy Sheriff Sammy D. Poole, which identified his informant as "John Doe, alias, a responsible and reliable citizen of said State and County, whose name I have this day disclosed to the Judge to whom this application is made," directed a search for gaming devices at a house belonging to the defendant ". . . located in 14th Civil District, Sullivan County, Tennessee, and described as follows: Frame residential house with brown shingles on front and red plank siding on back, on private drive one-tenth of one mile from U.S. 23, said drive being one mile south of intersection of U.S. 23 and Colonial Heights Road and connecting with U.S. 23." We do not agree with the defendant's insistence that this description of the premises is defective as being indefinite and misleading and uncertain. Nor is it rendered invalid by the fact that the affiant identified his informant as "John Doe, alias." It is not essential that the informant's name be stated in the affidavit made by the applicant for a search warrant. *Gallimore v. State*, 173 Tenn. 178, 116 S.W.2d 1001; *Simmons v. State*, 198 Tenn. 587, 281 S.W.2d 487. Hence, the accused cannot be prejudiced by the fact that the informant is named in the affidavit or is referred to therein as John Doe.

■ We cannot accept the defendant's argument that this search warrant issued to Deputy Sammy Poole on January 29, 1973 was void because of lack of a proper return. Due to the large number of items seized under this warrant, including one slot machine and numerous boxes of spare parts, Officer Poole's return was made on January 30, 1973 on two separate sheets of paper signed by him and attached to the search warrant. Unquestionably, the long list of contraband articles could not have been shown and accounted for by the officer in any other way. Moreover, the return of an officer upon a search warrant does not affect the validity of the warrant and the officer's execution thereof, and irregularities in regard to the return do not render evidence secured thereunder inadmissible. *State v. Calvert, supra.*

In each of the four search warrants in question, the information in the affidavit of the applicant sufficiently showed probable cause for issuance under the standards of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and the fruits of the searches conducted thereunder were admissible.

Next, the defendant earnestly maintains that the evidence is insufficient to sustain the verdict of the jury and preponderates against it and in favor of his innocence. He did not testify or offer any evidence. In summary, the State's evidence showed that the defendant was one of the organizers of the Duran Corporation which rented the basement of the B & B Package Store, where he operated a slot machine storage and repair shop and where 40 slot machines and assorted parts and tools were seized under the search warrant issued on 5 January 1973; that during a period of about two years he employed up to five persons who repaired slot machines in the basement shop and in one located at the rear of his house, and he was present frequently; that his employees delivered the machines to local clubs for him and serviced them, much of the time with trucks he provided; that about once a week some of his employees made the rounds of the clubs where his slot machines were placed and collected the money from the machines and, after settling with the proprietor or club operator, delivered the rest of the money to the defendant who was in charge of the entire operation. In other instances the defendant himself removed the money from the machines he had installed and split the proceeds with the club. After one of the clubs was raided, the defendant approached Lieutenant Sammy Poole the morning the confiscated machines were to be destroyed and told Poole the machines were his and asked that they not be damaged seriously and said he would haul them off in his truck. The defendant also told a newspaper reporter about his machines at one VFW Club and that he got a cut of the take.

Through cross-examination of the State's witnesses, the defendant undertook to establish the theory that his only connection with the machines located at different clubs throughout the county was to provide necessary repair service for the owners. Obviously, the jury did not accord credence to that theory. Considered in the light of the rules governing appellate review of the evidence when its sufficiency is challenged in criminal cases, by which we are bound, *Webster v. State*, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; *McGill v. State*, 4 Tenn.Cr.App. 710, 475 S.W.2d 223, upon this record the jury was fully justified in finding that the defendant owned and operated a large number of slot machines and placed them in various clubs and organizations in Sullivan County under arrangements by which he shared the proceeds of money risked and lost by persons playing those gambling devices, and that he was thus engaged in professional gambling on a grand scale in Sullivan County.

In his instructions to the jury the trial judge charged the material substance of the following provisions of TCA § 39–2033:

"(2) 'Gambling' means risking any money, credit, deposit, or other thing of value for gain contingent in whole or part upon lot, chance or the operation of a gambling device but does not include: bona fide contests of skill, speed, strength or endurance in which awards are made only to entrants or the owners of entries; bona fide business transactions which are valid under the law of contracts; pinball machines; and other acts or transactions expressly authorized by law.

"(3) 'Professional gambling' means accepting or offering to accept, for profit, money, credits, deposits or other things of value risked in gambling, or any claim thereon or interest therein. Without limiting the generality of this definition, the following shall be included: pool selling and bookmaking; maintaining slot machines, roulette wheels, dice tables, or money or merchandise push cards, punchboards, jars or spindles, in any place; and conducting lotteries, or policy or numbers

games, or selling chances therein; and the following shall be presumed to be included: conducting any banking or percentage game played with cards, dice or counters, or accepting any fixed share of the stakes therein.

"(4) 'Gambling device' means any article, device or mechanism by the operation of in any place in which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance; any article, device or mechanism which, when operated for a consideration does not return the same value or thing of value for the same consideration upon each operation thereof; any device, mechanism, furniture, fixture, construction or installation designed primarily for use in connection with professional gambling; and any subassembly or essential part designed or intended for use in connection with any such device, mechanism, furniture, fixture, construction or installation, but pinball machines shall not be deemed to be included in this definition."

■ In the context of this record, we conclude there is no merit in the Assignment that the court erred in permitting the District Attorney General in his closing argument to refer to the defendant as a professional gambler, nor in the complaint that the trial judge failed to grant a mistrial after the District Attorney General commented in the presence of the jury about the defendant's failure to testify. After carefully considering the manner in which the reference arose, together with the trial judge's specific instruction to the jury that ". . . you will give that [the defendant's failure to testify] no weight in considering of your verdict, as the defendant is not required to testify and this raises no inference against him, nor in anywise weakens the presumption of innocence of the defendant in this case," in our opinion the defendant's rights under the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Constitution of Tennessee and T.C.A. §§ 40–2402—40–2403 were not prejudicially violated. That is the test. *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758.*

---

\* During the Assistant District Attorney General's opening argument he commented about the expansion and growth of the defendant's slot machine business in Sullivan County in about two years, and included these statements: "and where has this defendant gone in that time? Where has he gone? How far has he come? How far? . . . And where was his next step that he almost got into, his own—his own Club. Where was he headed, gentlemen? Where was this man headed? And at what rate of speed was he going? To assume forty-eight percent (48%) of the ownership of the Embers Club with debts of thousands and thousands of dollars, and where was this money coming from? Where was it coming from and where was this man going and what was he going to do? . . . That is why this case is serious. That is why you've been here two (2) days. That is why you've heard enumerable witnesses, because where was he going, and you don't do it on nickels and dimes, do you? . . . Getting bigger and bigger, and wealthier until he was about to take his next giant step into the ownership of his own Club, and where, after that, would Mr. Squires go? . . . gentlemen, when you've watched this—you've watched for two (2) days and seen how this man grew, and grew, and where he was going, . . . Mr. Squires in a very short time permeated the entire County with his activities, and he was going as far as he could go." When the Assistant District Attorney General concluded his argument, the following colloquy occurred:

"MR. McINTURFF: Gentlemen of the jury, Mr. Mooney wants to know where he was going. I don't know, neither does he.

GENERAL MOONEY: We object, Your Honor. There's no evidence whether or not Mr. Squires knows.

GENERAL KIRKPATRICK: Mr. Squires didn't testify as to whether he knew whether he was going or not.

MR. McINTURFF: I said, 'neither does he'.

MR. McLELLAN: If Your Honor please, we move for a mistrial.

Groundless also is the defendant's insistence that the trial judge committed error in failing to charge that possession of gambling devices, proscribed as a misdemeanor by T.C.A. § 39–2006, is a lesser included offense of professional gambling. By the statutory definition, T.C.A. § 39–2033(3), *supra*, professional gambling may be carried on without employment or use of a gambling mechanism or device. "The infallible test for determining whether a given offense is lesser than and included in the one charged, is that the lesser included offense must be such that it is impossible to commit the greater without first having committed the lesser." *Yearwood v. State*, 2 Tenn.Cr.App. 552, 561, 455 S.W.2d 612, 616. As the Supreme Court of this State said in *Johnson v. State*, 217 Tenn. 234, 243, 397 S.W.2d 170, 174:

"   .   .   .   The true test of which is a lesser and which is a greater crime is whether the elements of the former are completely contained within the latter, so that to prove the greater the State must first prove the elements of the lesser."

Presumably the defendant would rely upon that test for his further contention that the gambling condemned by T.C.A. § 39–2001 is a lesser included offense of professional gambling and the trial judge should have so charged. T.C.A. § 39–2001 provides: "If any person play at any game of hazard or address for money or other valuable thing, or make any bet or wager for money or other valuable thing, he is guilty of a misdemeanor." But, as comparison of that statute and T.C.A. § 39–2033(3)

clearly demonstrates, these statutes are aimed at and define entirely different offenses. "In fact, the statute [T.C.A. § 39–2001] does not purport to cover any offense except the playing of a game, or the making of a bet or wager, for money or other valuable thing." *State ex rel. District Attorney-General v. Crescent Amusement Co.*, 170 Tenn. 351, 95 S.W.2d 310. It relates to an agreement between two or more persons to risk money or property on a contest or chance where one is the gainer and the other the loser. *Cleek v. State*, 189 Tenn. 302, 225 S.W.2d 70. On the other hand, the professional gambling statute is directed against the conduct of a gambling operation as a business enterprise. "Interpreting this statute, we think *professional gambling* requires for proof something more than *simple gaming*. We think it may denote, inter alia, an activity wherein the person by whom it is committed takes, backs or risks more than one bet or wager, knowing that even though he takes these extra risks, the odds or chances of winning are in his favor. It usually means, among other things, the type of gambling one does for a living or which consistently augments a person's personal income." *Alley v. State*, 218 Tenn. 497, 505, 404 S.W.2d 493, 497.

We find no merit in the defendant's final Assignment complaining that the trial court committed error in declaring that certain State witnesses, who were former employees of the defendant, were hostile.

Affirmed.

DWYER and RUSSELL, JJ., concur.

---

THE COURT: Gentlemen, gentlemen; now, gentlemen.

Mr. McINTURFF: I didn't interrupt you.

THE COURT: Mr. McInturff says he was referring to Mr. Mooney.

MR. McINTURFF: He's the one that asked the question. Neither does he. I don't even know where I'm going, and neither do you."