**STATE of Tennessee, Appellee,**

v.

**Donald GRIMES, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 18, 1985.

Permission to Appeal Denied by Supreme Court Sept. 9, 1985.

J. Stephen Fanduzz, Blountville, for appellant.

W.J. Michael Cody, Atty. Gen., Robin J. Mitchell, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., H. Greeley Wells, Stanley Kweller, Asst. Dist. Atty. Gens., Blountville, for appellee.

OPINION

SCOTT, Judge.

The appellant was convicted of professional gambling and received a sentence of two and one-half years in the state penitentiary as a Range I standard offender and a $1,000.00 fine. His application for probation was denied. On appeal, he has presented two issues. In the first, he challenges the sufficiency of the convicting evidence.

On seven occasions during the period of October 12, 1982 through December 11, 1982, Amy Riley, an undercover agent of the Tennessee Bureau of Investigation, visited a gambling operation in Sullivan Coun-

ty. The operation was located in a large building at the intersection of Highways 37 and 11W. To gain entry, it was necessary to activate a buzzer at the door. The door was monitored by a closed circuit television system. If the person seeking entry appeared acceptable, the door was unlatched and the individual was allowed to enter a vestibule enclosed with glass containing wire mesh. There he was met by a host, who would then allow the individual to enter the other areas of the building.

During her visits, Ms. Riley observed craps games, blackjack games and other card games in progress. On most occasions, Ms. Riley played craps. On others, she played blackjack. She always lost.

On each visit, Ms. Riley observed a number of people participating in the games, the numbers ranging from a minimum of twelve to a maximum of twenty-one. Free refreshments were served to the participants, including sandwiches, soft drinks and alcoholic beverages.

On each occasion, Ms. Riley observed the appellant either dealing or acting as the stick man at the craps table. The dealer is the individual who accepts the bets from each of the players at the table. The dealer handled the dice, the chips and, on some occasions, swapped chips for money. The most chips that Ms. Riley ever saw on the table at any one time were valued at thirty to forty thousand dollars. The stick man is the individual who, using a long stick with a crook on the end, retrieves the dice for each participant.

When she visited the operation on November 17, 1982, the appellant was the individual who let her into the building, and she played blackjack. At that time the craps table was disassembled and she observed the appellant and another man set it up, get the layout (a piece of felt with the craps game board printed thereon) from the office and place it on the table. Then, the gambling got under way.

On December 11, 1982, pursuant to a search warrant, other agents of the Tennessee Bureau of Investigation and agents of the Federal Bureau of Investigation conducted a raid. Ms. Riley was present in the establishment at the time of the raid, but she was treated just like any other participant and her identity was not revealed. Seized in the raid were the blackjack table, craps table, chips, dice, playing cards, micrometers, (for checking the square of the dice) parlay cards, a card marking pen, a wooden stick used by the stick man and four pistols found at different locations throughout the building.

The appellant presented no proof, and the jury found him guilty of professional gambling.

The appellant argues that there has been no proof that he was guilty of professional gambling as defined in TCA § 39–6–601(8), wherein that term is defined as follows:

"Professional gambling" means accepting or offering to accept, for profit, money, credits, deposits or other things of value risked in gambling, or any claim thereon or interest therein. Without limiting the generality of this definition, the following shall be included: pool selling and book making; maintaining slot machines, roulette wheels, dice tables, or money or merchandise push cards, punch boards, jars or spindles, in any place, and conducting lotteries, or policy or numbers games, or selling chances therein; and the following shall be presumed to be included: conducting any banking or percentage game played with cards, dice or counters, or accepting any fixed share of the stakes therein.

The appellant contends that there is no evidence to reveal that he accepted any sort of profit for his own benefit, since it was shown that when money was exchanged for the chips, he carried the money to the operator of the establishment. He also argues that since no one ever saw him being paid for his services or saw him accept any of the money or chips for himself, that it has not been shown that he benefited from the games.

The appellant relies on *Alley v. State*, 218 Tenn. 497, 404 S.W.2d 493, 497 (1966), wherein our Supreme Court held that *professional gambling* requires proof of something more than *simple gaming*. (empha-

sis in original) The Supreme Court continued:

> We think it may denote, inter alia, an activity wherein the person by whom it is committed takes, backs or risks more than one bet or wager, knowing that even though he takes these extra risks, the odds or chances of winning are in his favor. It usually means, among other things, the type of gambling one does for a living or which consistently augments a person's personal income. It may also mean the operation of premises and the use of devices through which gambling takes place, the operator of the premises and owner of the devices gaining pecuniary profit from the activity in some way.

The appellant also points to *Squires v. State*, 525 S.W.2d 686, 695 (Tenn.Cr.App. 1975), wherein this Court noted that the professional gambling statute is directed against the conduct of a gambling operation as a business.

Thus, the appellant contends that, since there is no direct proof that he was the owner of the premises or the gambling apparatus or that he was the manager or in control of the operation, he cannot be found guilty.

However, the appellant has failed to note some of the key language contained in *Alley v. State*, supra, upon which he relies. In *Alley*, our Supreme Court stated that professional gambling "may also mean the operation of premises and the use of devices through which gambling takes place." Unlike *Alley*, this case does not depend upon circumstantial evidence. There was direct, uncontroverted evidence from the undercover agent that the appellant was assisting in the "operation of the premises" and that he was one of the individuals "using the devices" through which the craps game was taking place.

■ A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630

(Tenn.1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

■ There was ample, indeed overwhelming, evidence from which any rational trier of fact would conclude that the appellant was guilty of professional gambling beyond a reasonable doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). This issue has no merit.

■ In the next issue the appellant contends that the trial judge erred by admitting the four guns found upon the premises, because the ownership and the registration of the guns were never established. It is the appellant's contention that there is no reference in the gambling statutes to the prohibition of the possession of firearms or weapons in a place where gambling is taking place. He notes that TCA § 39-6-602 sets forth the items subject to seizure in connection with a gambling operation. Since guns are not mentioned, he contends that such items were not intended to be subject to seizure. He relies on the maxim "expressio unius est exclusio alterius." (expression of one thing is the exclusion of another).

TCA § 39-6-602(c) provides in pertinent part as follows:

> All fixtures, equipment and stock, including without limitation furnishings and fixtures adaptable to nongambling uses and equipment and stock for printing, recording, coputing, transporting, safekeeping or (except as otherwise provided in § 39-6-603(3)) communication used in connection with professional gambling or maintaining a gambling premise, and all money or other things of value at stake or displayed in or in connection with professional gambling or any gambling device, shall be subject to seizure, immedi-

ately upon detection, by any peace officer, . . . .

In *West Knoxville American Legion Post 223 v. Jenkins*, 637 S.W.2d 899, 902 (Tenn.Cr.App.1982), this Court held that even innocent articles may be used in such manner as to make them subject to confiscation under this section of our code. It is clear that these guns, hidden at various places throughout the building, were used for the "safekeeping" of the gambling premises and were, therefore, admissible. This issue has no merit.

Finding no merit to either issue, the judgment is affirmed.

DWYER and CORNELIUS, JJ., concur.