# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 8, 2013

## STATE OF TENNESSEE v. ADRIAN CHANEY

**Appeal from the Criminal Court for Shelby County**
**No. 09-06562    James Lammey, Judge**

---

**No.  W2011-00141-CCA-R3-CD  - Filed March 12, 2013**

---

Appellant, Adrian Chaney, was indicted by the Shelby County Grand Jury in September of 2009 for one count of aggravated robbery and one count of attempted aggravated robbery.[1] After a jury trial, Appellant was convicted of the offenses as charged in the indictment. The trial court sentenced Appellant as a Range I, standard offender to twelve years for the conviction for aggravated robbery, and as a Range II, multiple offender to ten years for attempted aggravated robbery. The trial court ordered the sentences to run consecutively, for a total effective sentence of twenty-two years. Appellant did not file a motion for new trial.[2] On appeal, he contends: (1) that the evidence was insufficient; (2) the trial court made several errors with regard to the admission of evidence; and (3) that his sentence is illegal and excessive. After a review of the record, we determine that Appellant waived the consideration of any issues with exception of sufficiency of the evidence and sentencing by failing to file a motion for new trial or show plain error on the part of the trial court. Additionally, we determine that the evidence was sufficient to establish Appellant's identity as the perpetrator of the crimes and Appellant failed to provide this Court with an adequate record to review the trial court's determination of his status as a Range II, Multiple Offender with regard to the conviction in Count II. Accordingly, the judgments of the trial court are affirmed.

---

[1] A co-defendant, Talmadge Hurt, was also named in the indictment.

[2] Initially, we address the fact that we are unable to discern from the record whether Appellant's notice of appeal is timely. "In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from. . . ." Tenn. R. App. P. 4(a). The judgment form presented to this Court on appeal is not file stamped by the trial court clerk. The judgment indicates that the "Date of Entry of Judgment" is "11/2/10" but above this in the box the following notation appears: "Judgment Executed 12-7-10." The notice of appeal, filed on January 7, 2011, indicates with a handwritten notation that it is appealing from the judgment of "December 7, 2010." However, in criminal cases, "the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." *See id.* Based on these facts, we have decided that it is in the interest of justice to waive the timely filing of the notice of appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., Joined.

Jake Erwin, Memphis, Tennessee, for the appellant, Adrian Chaney.

Robert E. Cooper, Jr., Attorney General and Reporter, Rachel Harmon, Assistant Attorney General; Amy P. Weirich, District Attorney General, and Stacey McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In September of 2009, Appellant and Talmadge Hurt were indicted for one count of aggravated robbery and one count of attempted aggravated robbery for events that took place at La Playita Mexican Restaurant in Memphis on April 7, 2007.

At trial, Whitney Horton and Melissa South, the victims, both testified that they were working at the Memphis Humane Society on April 7, 2007. They left work around noon to get lunch at La Playita Mexican Restaurant. As they entered the restaurant to place their take-out orders, they noticed two African-American men outside. One of the men was described as larger than the other, wearing a black letterman jacket with orange sleeves and a baseball cap over his long, twisted hair. The other man was described as smaller, wearing a dark gray hooded sweatshirt.

The victims walked into the restaurant, ordered their food, and sat down on a small bench near the entrance to wait for their order. After about five minutes, one of the men from the parking lot came inside. He looked briefly around the restaurant when he entered. The other man followed soon thereafter, wearing a "red" bandana with white skulls and crossbones outlined in black over his face. The second man "did not hesitate" when he entered the restaurant. He was carrying a silver gun, went straight to the victims, and pointed the gun at Ms. Horton. The gun was about six inches away from her face. She was "scared for [her] life if not more." The assailant mumbled something before grabbing her purse. Ms.

Horton described the purse as "[w]hite with multicolored hearts on it and bright pink straps." Inside the purse was Ms. Horton's wallet, checkbook, twenty dollars in cash, an iPod, and car keys.

The assailant next approached Ms. South; she refused to relinquish her purse. At that point, the assailant attempted to cock the gun. Ms. Horton screamed. Restaurant employees ran toward them and the men left the restaurant. Ms. Horton stayed inside while Ms. South ran outside to call 911 and try to see in which direction the assailants had escaped. Ms. South and other witnesses from a nearby nail salon saw the two men run to a large, gold sedan that looked like a Crown Victoria or Buick Regal with dark tinted windows. The car took off at a normal speed.

Ms. Horton's purse was later returned to her but the contents were missing. The victims were presented with photographic lineups during which they independently identified both Appellant and the co-defendant. Appellant was identified as the smaller assailant with the gun.

Later, at the preliminary hearing, Ms. Horton could not identify Appellant. There was testimony at the trial that Appellant was wearing a toy or costume eye patch during the lineup at the preliminary hearing. Ms. South, however, was able to identify Appellant at the preliminary hearing.

Both victims identified Appellant and the co-defendant at trial. Ms. Horton admitted at trial that she was "surprised" by Appellant's size at trial and commented that he was a lot taller than the person she described to police. In fact, she admitted that she did not know if the description she gave to police "would be accurate or not" after she saw Appellant at trial. Similarly, Ms. South admitted that she only saw the defendants for a few seconds while entering the restaurant and that Appellant was taller and more muscular than she remembered. Ms. South explained that she was sitting down when robbed but was sure that it was "still the same people [that robbed the victims]. That's them."

A video tape of the robbery from the restaurant surveillance camera was played for the jury. Additionally, during the investigation, the State learned that co-defendant Hurt drove a gold Mercury Grand Marquis, a car with the same body style as the Ford Crown Victoria.

Appellant and co-defendant Hurt did not testify at trial but presented several witnesses in their behalf. The majority of the witnesses testified that Appellant and co-defendant, brothers, did not have a history of always getting along. The various witnesses testified that the men were seen together at a barbeque at the home of their deceased uncle for the majority

of the day that the robbery took place. There was testimony that the gold Mercury Grand Marquis was at the location of the barbeque on the day of the robbery. Further, there was testimony from Appellant's girlfriend that he helped her look at and clean a house for a portion of the day on which the robbery took place.

At the conclusion of the proof, the jury found Appellant guilty of aggravated robbery and attempted aggravated robbery. Co-defendant Hurt was convicted of facilitation of aggravated robbery and facilitation of attempted aggravated robbery. After a sentencing hearing, Appellant was sentenced as a Range I, standard offender to twelve years for the conviction for aggravated robbery, and as a Range II, multiple offender to ten years for attempted aggravated robbery. The trial court ordered the sentences to run consecutively, for a total effective sentence of twenty-two years. Appellant did not file a motion for new trial. Appellant argues on appeal: (1) that the evidence was insufficient; (2) the trial court made several errors with regard to the admission of evidence; and (3) that his sentence is illegal and excessive.

*Analysis*
*Evidentiary Issues*

Appellant argues on appeal that the trial court erred by refusing to allow counsel for Appellant to question a defense witness about the identity of the perpetrators on the surveillance video from the restaurant. Specifically, Appellant is referring to the testimony of Deadrick Sears, a childhood friend of both Appellant and Co-defendant Hurt. During his testimony, counsel for Appellant asked him to examine photographs that were obtained from the surveillance video in order to discern if he could identify Appellant and Co-defendant Hurt from the video. The State objected. The trial court refused to allow the witness to give his opinion because the witnesses testimony could not "substantially help the jury in any way," and the quality of the video was poor. In a related issue, Appellant argues that it was improper for the trial court to allow the victim's father, Billy Horton, to testify about whether Appellant was wearing an eye patch at the preliminary hearing.

At the outset of our analysis, we note that Appellant failed to file a motion for new trial and therefore, failed to raise these issues in a motion for new trial. The failure of a defendant to file a motion for new trial ordinarily waives issues on appeal. Sentencing and sufficiency issues, however, need not be raised in a motion for new trial as a prerequisite for review of these issues on appeal. *See State v. Boxley*, 76 S.W.3d 381, 389-90 (Tenn. Crim. App. 2001). Therefore, Appellant's issues, other than sufficiency of the evidence or sentencing are waived in the absence of plain error. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties

-4-

or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.").

Tennessee Rule of Appellate Procedure 36(b) defines plain error. It states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for this court to find plain error,

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (*quoting State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." *State v. Bledsoe*, 226 S .W.3d 349, 355 (Tenn. 2007) (*citing U.S. v. Olano*, 507 U.S. 725, 734 (1993)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Smith*, 24 S.W .3d at 283.

Curiously, Appellant does not argue that these issues should be reviewed utilizing plain error review. Further, Appellant's brief does not address the absence of the motion for new trial. The State merely argues that the evidentiary issues are waived. We decline to review these issues for plain error. We cannot conclude that a clear and unequivocal rule of law has been breached. Additionally, it is not clear from the record before this Court whether Appellant waived the filing of a motion for new trial for tactical reasons. These issues are waived.

*Sufficiency of the Evidence*

Appellant claims on appeal that the evidence is insufficient to support his convictions. Specifically, he insists that there "[w]as no credible testimony by which a rational juror could have found beyond a reasonable doubt that [Appellant] was one of the perpetrators." The State, on the other hand, argues that the jury accredited the identification of the perpetrators made by the victims. In other words, that the evidence was sufficient.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.*

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *See Tuggle*, 639 S.W.2d at 914.

We start our analysis with the definition of aggravated robbery. A person commits aggravated robbery who commits a robbery with a deadly weapon. T.C.A. § 39-13-402(a)(1). Robbery "is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly

obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103.

When a defendant is charged with the attempted commission of a crime, there must be evidence that the defendant "[has acted] with the kind of culpability otherwise required for the offense" or "[has acted] with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; . . ." T.C.A. § 39-12-101(a)(1), (2). Criminal attempt also occurs when the defendant "[a]cts with the intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3).

Viewing the evidence in a light most favorable to the State, the proof at trial revealed that both Ms. Horton and Ms. South saw and took notice of Appellant and his co-defendant standing outside the restaurant as they entered. They were able to describe the clothing that the men were wearing and saw their faces. When Appellant entered the restaurant, a bandana covered his face. Both of the victims identified Appellant and the co-defendant from a photographic lineup. Further, both victims identified Appellant at trial. Surveillance videotape from the restaurant was played for the jury during trial. While the victims both expressed some degree of uncertainty as to their identification at various points prior to trial, they ultimately explained that they were certain as to their identification of Appellant as the perpetrator.

Appellant relies on *Poole v. State*, 467 S.W.2d 826 (Tenn. Crim. App. 1971), and *State v. Chad Allen Love*, No. E2010-01782-CCA-R3-CD, 2012 WL 391064 (Tenn. Crim. App., at Knoxville, Feb. 8, 2012), to support his argument that the victims' identifications were insufficient to support the convictions herein. In both *Poole* and *Chad Allen Love*, unlike the case herein, there was never a positive identification of the defendant. As stated above, the identification of a defendant is a question of fact for the determination of the jury after consideration of the proof. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). The jury obviously accredited the victims' testimony herein to establish Appellant's identity. The evidence was sufficient to support the convictions. Appellant is not entitled to relief on this issue.

*Sentencing*

Lastly, Appellant insists that the trial court imposed an "excessive sentence that was contrary to law." Specifically, Appellant argues that the trial court improperly classified him

as a Range II, Multiple Offender with respect to his conviction for attempted aggravated robbery in Count II by improperly applying the twenty-four hour merger rule discussed *infra* to his prior convictions of theft over $1,000 and kidnapping.[3]  The State disagrees.

Appellate review of sentencing is for abuse of discretion.  We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment.  T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.  *See Bise*, 380 S.W.3d at 705 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001).  Thus, according to *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." 380 S.W.3d at 709.

It is important to note at the outset of our review of the sentence imposed herein that the record is devoid of any exhibits from the sentencing hearing.  The record contains merely a transcript of the sentencing hearing along with the judgment forms in the technical record.  From that scant record, it appears that Appellant was convicted in 2004 of theft over $1,000 and kidnapping, crimes that were apparently committed on October 31, 2003, and November 1, 2003, within a twenty-four-hour period.

---

[3] Appellant does not challenge the trial court's decision to run the sentences consecutively.

Appellant bears the burden of preparing an adequate record for this Court's review on appeal. *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). An incomplete record that does not contain a transcript of the proceedings relevant to an issue on appeal, or portions of the record upon which the party relies, precludes this Court from considering the issue on appeal. *Id.* at 560-61; Tenn. R. App. P. 24(b). We note the supreme court's recent decision in *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 202), which directs this Court, in cases in which the record on appeal does not contain a transcript of a guilty plea hearing to "determine on a case-by-case basis whether the record is sufficient for meaningful review under the standard adopted in *Bise*." We have determined that the record is adequate for review of the issue raised by Appellant. It appears that the trial court properly applied the twenty-four-hour merger rule as contained in Tennessee Code Annotated section 40-35-106(b)(4). The statute defines a multiple offender as a defendant who has received : "(1) A minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable; or (2) One (1) Class A prior felony conviction if the defendant's conviction offense is a Class A or B felony." T.C.A. § 40-35-106(a). In order to determine the number of prior convictions, the statute guides the court as follows with respect to convictions for multiple felonies committed within the same twenty-four-hour period:

> Except for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury or threatened bodily injury to the victim or victims, or convictions for the offense of aggravated burglary under § 39-14-403, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions; . . . .

T.C.A. § 40-35-106(b)(4). Kidnapping is "false imprisonment . . . under circumstances exposing the other person to substantial risk of bodily injury." T.C.A. § 39-13-303(a). This Court has excluded kidnapping from the twenty-four-hour merger rule on the basis that exposure to substantial risk of bodily injury is the "legal equivalent of 'threatened bodily injury.'" *State v. Montez James*, No. W2011-01213-CCA-R3-CD, 2012 WL 4340658, at *18 (Tenn. Crim. App., at Jackson, Sept. 24, 2012). Thus, it appears that the trial court properly considered Appellant's prior felony convictions before sentencing him as a Range II, Multiple Offender. Appellant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE