LYNN WORDEN and BOB BARNETT *v.* STATE OF TENNESSEE.

(*Knoxville,* September Term, 1954.)

Opinion filed November 16, 1954.

B. B. SNIPES, of Johnson City, H. DENNIS ERWIN, of Erwin, for plaintiffs in error.

NAT TIPTON, Assistant Attorney General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is an appeal from a conviction under a two count indictment charging (1) the possession of whiskey for the purpose of sale, and (2) possessing whiskey. The punishment, fixed by the jury and approved by the trial court, was a fine of $500 and six months' imprisonment.

The evidence upon which the defendants were convicted was the discovery of 37 half-pints of whiskey in Room 11 of the Savoy Hotel in Johnson City, the search of the premises being made pursuant to the authority of a search warrant issued to a duly appointed Deputy Sheriff of Washington County, Tennessee.

The sole question at issue is the validity of the search warrant. The defendants insist that it is a general warrant and is expressly prohibited by the Constitution in that there is no description of the premises to be searched. The oath in support of the warrant is that "John Doe alias or Bob Barnett is now in unlawful possession and control of * * *," etc., intoxicating liquors upon the premises at 100½ Tipton Street, Johnson City, Tennessee. The warrant authorizes the search of these premises. It is conceded by the State that there is but one building at 100½ Tipton Street, and it is known as the Savoy Hotel. This building has a restaurant on the first floor. The hotel proper is on the second floor and has twelve or fifteen rooms and a lobby. It is reached by

a stairway from Tipton Street. At the time the search was made some of the rooms were occupied by guests, or at least they were supposed to be guests. One of the guests was a lady who was checking out when the officers arrived. Another was checking out the next day to enter a sanitarium, "Mountain Home", at Johnson City. The warrant directed the search of all the rooms. Most, if not all the rooms, were equipped with beds, closets and dressers, such as are usually found in hotels. The whiskey was found in Room No. 11 in a chest of drawers.

The defendant Worden was the hotel clerk, while Barnett's wife was said to be the owner of a half interest in the building. The defendants offered no testimony but relied solely upon their contention that the evidence should be stricken from the record because the warrant was defective in that it was a general warrant and did not specify or describe a particular place to be searched.

There is no evidence that Barnett was present when the search was made; in fact he was not. He arrived after Worden had been arrested and made bond for him. While making this bond he too was placed under arrest.

The State insists that the case is controlled by *Renner* v. *State,* 187 Tenn. 647, 216 S. W. (2d) 345, 346; while the defendants rely upon *State* v. *Bass,* 153 Tenn. 162, 281 S. W. 936.

In the Renner case the warrant described the premises to be searched as " '1476½ Market St. this is upstairs over a cafe known as the Paris Cafe.' " It was what is called a "John Doe" warrant. There were only two apartments in the building; Renner occupied two rooms and one McKinney occupied the other three rooms. The Court said parenthetically, "that both parties seemed to make themselves at home all over the place like one big family having a common interest."

Renner v. State was affirmed on the decision of this Court in *Seals* v. *State,* 157 Tenn. 538, 11 S. W. (2d) 879, where the warrant described the offender as ''John Doe, alias''. It was there insisted that the failure to name the person in possession was a fatal defect.

We think that *State* v. *Bass,* supra, controls the case at bar. In the Bass case it was found that the premises described in the warrant contained three buildings, and it was held that this was insufficient in that it left it to the discretion of the police as to which of the three buildings on the lot should be searched. It enabled the officers to search a building ''occupied by strangers to the process.'' It is true that in the case at bar the name of the defendant Barnett appears in the search warrant as being in possession of the premises, to wit, 100½ Tipton Street. But the fatal defect in the warrant is that, as in State v. Bass, it enabled the officers to search rooms in the hotel that were occupied by persons who were ''strangers to the process''. Moreover the name of the defendant Worden does not appear in the oath or in the warrant as being in possession of any room or any part of the premises to be searched.

We think the weight of authority supports the holding in *State* v. *Bass,* supra, that a search warrant is invalid where it authorizes the search of multiple premises that are occupied by different persons. The general rule was stated in the Bass case, supra, 153 Tenn. at page 167, 281 S. W. at page 937, as follows:

''As a matter of course where there are two streets in the same city bearing identical names and numbers, or if there be more than one building located at the designated street number, *or a number of occupants in possession of different rooms or different apartments at the particular street number,* refer-

ence to the street number would not afford an accurate description of the premises to be searched." (Italics ours.)

See also many cases in 31 A. L. R. (2d) 864, to the same effect.

The foregoing pronouncement of what we consider to be the controlling principle must not be confused with *Peters v. State,* 187 Tenn. 455, 215 S. W. (2d) 822, 823, and similar cases, holding: "A search warrant directing a search of a principal building authorizes the search of an outhouse clearly appurtenant to and part of the same premises." "We have expressly held that the word 'possessions,' as used in our Constitution, art. 1, § 7, includes more than the 'curtilage.' It includes buildings in daily use in connection with and as a necessary part of farming operations." In other words the holding of the Court in these, and similar cases, presupposes that the building mentioned in the warrant to be searched would include outhouses, vehicles upon the premises, and other places, which are appurtenant to the described building and are under the control of persons named in the warrant.

Summarizing the facts as they appear in the record before us, there is no evidence that the defendant Bob Barnett had any connection whatever with the operation of the premises searched, i. c. the Savoy Hotel. Nor is there any evidence that his co-defendant, Worden, was in possession of any of the rooms in this hotel. The record is silent as to the ownership of the whiskey found in Room No. 11. It is likewise silent as to whether or not the room had been assigned to a guest at the time of the search. The officer making the search was asked: "Did you check the registration card to see who had Room 11?" Answer: "Didn't check the registration cards at all."

■ We are asked to affirm this conviction on the theory that the defendants were parties to possession and disposition of whiskey found by the officers in Room 11. This theory is based solely upon an inference arising from the fact that he was the hotel clerk. We know of no rule of law whereby a hotel clerk, by reason of his position as such, is chargeable with participation in the commission of any and all offenses that may be committed in the several rooms and apartments in a hotel.

The assignments of error are sustained, and the case reversed.