# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 28, 2014 Session

## STATE OF TENNESSEE v. TOMMY KAYE THOMPSON

**Appeal from the Circuit Court for Giles County**
**No. 16242     Robert Lee Holloway, Jr., Judge**

---

### No. M2014-00596-CCA-R3-CD - Filed April 15, 2015

---

During the search of a recreational vehicle ("RV") belonging to the defendant, Tommy Kaye Thompson, police uncovered approximately eight ounces of marijuana, two sets of scales, plastic baggies, and numerous firearms. The defendant challenged the search on the grounds that the search warrant, which was targeted at recovering security equipment allegedly stolen by the defendant's grandson, was issued for a search of the house on the defendant's property but did not extend to the RV, which was parked on a neighboring lot and tethered to the defendant's property through an electrical cord. The trial court denied the motion to suppress, and a jury convicted the defendant of the possession of not less than one-half ounce or more than ten pounds of marijuana with the intention to sell, a Class E felony, and possession of drug paraphernalia, a Class A misdemeanor. He was acquitted of a firearms offense. On appeal, the defendant asserts that the trial court erred in denying his motion to suppress because the RV was outside the scope of the search warrant. We conclude that the search warrant authorized the search of the RV, and we accordingly affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROGER A. PAGE, and ROBERT H. MONTGOMERY, JR., JJ., joined.

Phillip K. Baddour (at trial) and A. Colbrook Baddour (at trial and on appeal), Pulaski, Tennessee, for the appellant, Tommy Kaye Thompson.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; T. Michael Bottoms, District Attorney General; and Beverly Jo White, Assistant

District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The defendant came to the attention of law enforcement as a result of the investigation of his grandson's involvement with a plan to destroy a truck and lodge an insurance claim for the truck. While serving a search warrant in an attempt to locate some equipment and tools which had been in the bed of the destroyed vehicle, police entered the RV where the defendant was residing. The defendant was subsequently charged with possession of not less than one-half ounce or more than ten pounds of marijuana with the intent to sell, possession of drug paraphernalia, and possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony.

At the hearing on the motion to suppress, Investigator Shane[1] Hunter testified that on January 18, 2013,[2] Tommy Thompson, III, the defendant's grandson, contacted police to report that his boss's vehicle had been stolen while it was parked at a house on the defendant's property, where the defendant's grandson resided with his girlfriend and child. The police asked the vehicle's owner to make a report, and the owner then contacted police to confirm the vehicle was missing. On January 21, 2013, police recovered the vehicle from the Elkton River. Tools and security equipment which had been in the bed of the truck were missing.

After the vehicle was pulled from the river, Edward Sisk contacted a police officer to share information about the theft. Mr. Sisk informed police that around January 17, 2013, he had towed the vehicle from the defendant's grandson's home to his own nearby property for repairs and that after examining it, he informed the defendant's grandson that there would be difficulties with repairing the vehicle.[3] The defendant's grandson then proposed that Mr.

---

[1]Investigator Hunter's first name is given as "Shannon" at the motion to suppress and "Shane" in the affidavit supporting the warrant and at trial.

[2]At the suppression hearing, Investigator Hunter testified that the police were contacted about the stolen vehicle on January 17, 2013, but the warrant, testimony at trial, and Investigator Hunter's references to the timing of other events clarify that the call was made on January 18, 2013.

[3]The affidavit states that Mr. Sisk told the defendant's grandson that the vehicle repair would be expensive, while Investigator Hunter testified at the hearing that Mr. Sisk had told the defendant's grandson that he could not repair the vehicle.

Sisk tow the vehicle to the river so that it could be disposed of, and he offered Mr. Sisk the contents of the truck bed – two ladders, several boxes of security items, and some tools – if he assisted. Mr. Sisk refused to assist in disposing of the vehicle; instead, he towed the vehicle back to the defendant's grandson's home. Mr. Sisk happened to be outside his own house during the late hours of January 17, 2013, and he saw the vehicle being towed past his house and down the road. The route the tow truck took was consistent with going toward the river.

On January 22, 2013, after receiving this information from Mr. Sisk, Investigator Hunter interviewed the defendant's grandson, who admitted soliciting Mr. Sisk to dispose of the vehicle but claimed he had been joking.

That same day, which was also the day before the search was carried out, Investigator Hunter went to the defendant's property in part to gather information to assist him with the drafting of the warrant. The property was accessible from a U-shaped driveway which led to two houses. One of the houses belonged to a neighbor, and the other belonged to the defendant. There were three sets of living quarters associated with property owned by the defendant: a house, an RV, and a garage apartment, where David Parker, a friend of the defendant's grandson, lived. When Investigator Hunter came to the premises on January 22, 2013, he spoke with the defendant who was "at his RV camper." Investigator Hunter told the defendant he was looking for the defendant's grandson's girlfriend, and the defendant told him, "[S]he's not here. She's next door in the house." Investigator Hunter testified that during this meeting, the defendant told him "that he was living in the camper, and that his grandson was living in the residence with his girlfriend." Past the defendant's RV was a burn pile, which Investigator Hunter wished to include in the search warrant. Beyond the burn pile was the second house, which belonged to a neighbor. Accordingly, when Investigator Hunter visited the property, he spoke with the defendant and asked about the ownership of the surrounding property. According to Investigator Hunter, he asked the defendant if he owned the property and "asked specifically i[f] this RV was on his property," and the defendant responded, "This is my property." Investigator Hunter testified, ". . . and you know, he was motioning. You know, he was showing the camper and everything."

The police decided to solicit the help of Mr. Parker, the occupant of the garage apartment on the property owned by the defendant. Mr. Parker at that time had a probation revocation warrant. On January 23, 2013, the day the search warrant was issued, Mr. Parker and his girlfriend, Mary Albright, gave statements to police. These statements confirmed the defendant's grandson's apparent involvement in the scheme to dispose of the vehicle. Mr. Parker told police that the vehicle was not functioning properly and that the defendant's grandson's boss had offered the defendant's grandson money, vacation time, and the contents of the truck to get rid of it. Mr. Parker had been solicited to help but had refused. Mr. Parker

also noted that the defendant's grandson had planned to roll the vehicle into the river on January 15th, hoping to make it look like a fishing accident. Significantly, Mr. Parker told police that on January 23rd, he was moving out and removing possessions from the main house, and he saw security cameras and tools, which had not been there previously.

Ms. Albright confirmed that the defendant's grandson was hoping to get rid of the vehicle; he had asked her on January 17, 2013, if she knew of a "chop shop" and told her he could delay reporting the vehicle missing if she did. She also told police that, as the garage apartment had no bathroom, she went to the bathroom in the house on the night the car disappeared, and the defendant's grandson was carrying a ladder and told her he planned to do something illegal.

The warrant was issued on the same day. It stated:

> Proof by affidavit having been made before me by Investigator Shane Hunter with the Giles County Sheriff's Department that there is probable cause to believe that certain evidence of a crime to wit[]: Theft over $1,000.00 TCA: 39-14-103 and that Tommy Kaye Thompson and Tommy Kaye Thompson III who both reside at 6294 Elkton Pike, Prospect, Tennessee in the County of Giles is/are in possession of certain evidence of a crime to wit[]: Theft over $1,000.00 and the evidence to be searched for is follows: security cameras, security camera equipment, electrical box outlets, tools and any other parts there of and any other evidence of a crime.
>
> YOU ARE THEREFORE, HEREBY COMMANDED to make an immediate search of the person(s), premises, to include vehicle(s) and outbuildings of the occupants of the residence located on said property, herein above described and more particularly described as follows: From the intersection of Highway 64 bypass and Highway 31 South travel south on Highway 31 South and arrive at the residence located at 6294 Elkton Pike. The residence is a grey vinyl siding house with the numbers 6294 displayed on the front of the residence. The residence has a detached garage/apartment located upon said property. The garage/apartment is grey vinyl. A chain link fence surrounds the rear of the residence. A brick mailbox located in the front yard displays the numbers 6294.

-4-

Investigator Hunter testified that police arrived on the property and searched the RV first, recovering evidence. Investigator Hunter stated that the RV was hooked up by a cord to an electrical box that was next to the defendant's residence as described in the search warrant. However, Investigator Hunter later discovered that the RV was actually parked on the neighbor's property and not the defendant's property. The trial court denied the motion to suppress, and the case against the defendant proceeded to trial.[4]

At trial, Investigator Hunter testified consistently with his suppression hearing testimony regarding the report of the stolen vehicle and his encounter with the defendant prior to the search. Investigator Hunter inventoried the items seized from the RV, including the marijuana, baggies, scales, and guns. Investigator Hunter testified that the defendant drove up in a car during the search. The defendant was not carrying any guns, and none were located in the vehicle he was driving. In the console of the car he was driving, police found a marijuana pipe.

Investigator Michael Thomason testified that during the search of the RV, he opened a drawer containing a plastic grocery-type bag with numerous small baggies and two sets of scales, one digital and one manual. He also discovered a vacuum-sealed bag containing a green, leafy substance he recognized as marijuana. He acknowledged that a heavy marijuana user could smoke one-quarter ounce per day and that a user might put a smaller amount into a bag for personal use. Officer Scott Nations identified five pistols and three long guns recovered from the RV. One pistol was loaded and in a holster located on a table. The other firearms, some of which were loaded, were under a lift-up bed.

Officer Nations testified that the defendant drove up while police were conducting the search. When asked about the guns, the defendant admitted they were in his possession. He stated that he had bought them from "Johnny, from Ardmore," and that he had sold them to a friend from California, who had not yet retrieved them. Agent Lela Jackson with the Tennessee Bureau of Investigation confirmed that the substance seized from the RV was marijuana.

The defendant presented the testimony of Brandy Hammon, his son's ex-wife, who testified that she had known the defendant for sixteen or seventeen years and had never known him to sell drugs of any kind. She testified that the defendant smoked marijuana recreationally and would smoke four to five marijuana cigarettes in one night.

The jury acquitted the defendant of the firearms offenses but convicted him of the

---

[4]The defendant's grandson also faced charges and challenged the legality of the search at the same hearing.

possession of marijuana with the intent to sell and of possession of drug paraphernalia. On appeal, the defendant's sole issue is the claim that the physical evidence was illegally seized because the search warrant did not extend to the RV.

## ANALYSIS

### I. Standard of Review

This court is bound by a trial court's factual determinations made on a motion to suppress evidence unless the evidence preponderates against them. *State v. Saine*, 297 S.W.3d 199, 205 (Tenn. 2009). Conclusions of law and the application of law to the facts are reviewed de novo with no presumption of correctness. *Id.*

### II. Scope of the Warrant

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. The prohibition against unreasonable searches and seizures afforded by the federal and state Constitutions is accompanied by the general rule that a warrantless search is presumed unreasonable and that any evidence discovered through such a search is subject to suppression. *State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013). This exclusionary rule "is 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Herring v. United States*, 555 U.S. 135, 139-40 (2009) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *see State v. Sanders*, No. M2011-00962-SC-R11-CD, __ S.W.3d __, 2014 WL 5801665, at *9 (Tenn. Nov. 10, 2014). In evaluating the legality of a search, we keep in mind that "[t]he touchstone of the Fourth Amendment is reasonableness." *Moats*, 403 S.W.3d at 177 (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991))

A valid warrant must describe with particularity the place to be searched and items to be seized, and the warrant must be supported by an affidavit that establishes probable cause that the evidence will be found in the place to be searched. T.C.A. § 40-6-103 (2010); *State v. Reid*, 91 S.W.3d 247, 273, 275 (Tenn. 2002). The particularity requirement is met when the description "particularly points to a definitely ascertainable place so as to exclude all others, and enables the officer to locate the place to be searched with reasonable certainty without leaving it to his discretion." *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). The premises should be described with adequate particularity to prevent a warrant authorizing the

search of one person's property to be applied instead to the property of another. *State v. McCary*, 119 S.W.3d 226, 247 (Tenn. Crim. App. 2003).

The defendant challenges the search on the basis that the RV was not particularly described in the warrant and was not parked on the premises at the time of the search.[5] The State contends that the search of the RV was conducted pursuant to the terms of the warrant because the warrant authorized a search of vehicles, and that accordingly, there was no violation of the defendant's rights.

The defendant correctly notes that the search warrant, while describing the premises, including the garage apartment, with great particularity, does not mention the RV.[6] Instead, it names the defendant and his grandson and authorizes "an immediate search of the person(s), premises, to include vehicle(s) and outbuildings of the occupants of the residence located on said property." The State contends that the mention of vehicles, combined with the naming of the defendant in the warrant, was sufficient to authorize the search.

A vehicle which is on the premises named in the warrant but not in the possession or control of persons named in the warrant falls outside of the scope of a search. In *State v. Sircy*, the police had a warrant for a home with suspected drug activity, and two occupants were named in the warrant. *State v. Sircy*, 383 S.W.2d 37, 38 (Tenn. 1964). The occupants were arrested during a controlled buy off-site, and the warrant was then executed at their home. *Id*. at 38-39. The defendant drove onto the premises while the search was taking

---

[5]We note that the defendant may not challenge the search of the RV based on the contention that it was an illegal search of his neighbor's property, as he lacks standing to do so. *United States v. Leon*, 468 U.S. 897, 910 (1984) ("Standing to invoke the rule has thus been limited to cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of police misconduct."). Accordingly, the analysis here is the same as it would be had the RV been parked in the street in front of the house.

[6]The defendant in effect concedes that the search of the RV is properly analyzed as a vehicle search, and we do not revisit this issue. *See California v. Carney*, 471 U.S. 386, 392-93 (1985) (concluding that motor home fell under vehicle exception due to mobility and its location in a place not regularly used for residential purposes); *United States v. Navas*, 597 F.3d 492, 499-500 (2d Cir. 2010) (applying vehicle exception to unhitched trailer and distinguishing it from motor home on blocks); *United States v. Hamilton*, 792 F.2d 837 (9th Cir. 1986) (concluding that automobile exception applied to mobile home parked in driveway and connected with electrical cord because it had been moved the previous day and had easy access to a public road) *disapproved on other grounds by United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997); *State v. Otto*, 840 N.W.2d 589 (N.D. 2013) (applying automobile exception to warrantless search of camper which was not attached to a vehicle and was tethered by power cords in commercial parking lot).

place, and because he pulled into the driveway, his vehicle was searched and burglary tools were seized. *Id.* at 38. The officers knew that the defendant did not live there and were familiar with the vehicles which the occupants used. *Id.* at 39. The court concluded that the evidence should be suppressed because the defendant was a "stranger to the process" and that there was no probable cause to believe that the persons named in the warrant had control over the vehicle. *Id.* at 40-41. Likewise, in *State v. Barry Charles Vassar*, the warrant authorized the search of certain premises, including vehicles on the premises, and two named persons. *State v. Barry Charles Vassar*, C.C.A. No. 85-12-III, 1985 Tenn. Crim. App. LEXIS 3198, at *1 (Tenn. Crim. App. July 26, 1985). The defendant was visiting the home, and his company van, which was parked near the house next to an identical van belonging to the occupants, was included in the search. *Id.* at *2. Police had to retrieve the keys from the defendant to search his van. *Id.* The court concluded he was a "stranger to the process," as no information regarding him had been provided to the magistrate issuing the warrant, and the evidence recovered from the visitor's van was suppressed. *Id.* at *5.

Evidence is also subject to suppression when a vehicle, not described in the warrant but in the possession or control of persons named in the warrant, is not located on the premises described in the warrant. In *Dolen v. State*, cited by the defendant, the warrant permitted search of a residence and all outbuildings or vehicles on the premises. *Dolen v. State*, 216 S.W.2d 351, 352 (Tenn. 1948). The defendant's vehicle was parked on a road adjoining the property but was not on the premises. *Id.* This court held that evidence seized from the car must be suppressed because the search was outside the scope of the warrant. *Id.* at 353. The court concluded that "a warrant directing the search of a certain described parcel of real estate does not authorize the search of an automobile parked in front of that real estate, but outside its boundaries, on an adjoining road." *Id.*

In *State v. Southall*, this court likewise found a search of a vehicle off the premises to be unauthorized, although the search warrant purported to direct a search of all vehicles within the possession or control of the defendant. *State v. Greg Southall*, No. M2006-01738-CCA-R3-CD, 2007 WL 1828878, at *1 (Tenn. Crim. App. June 25, 2007). Law enforcement officers were preparing to execute a warrant to search the defendant's home in the afternoon but were aware that the defendant had left in the morning. *Id.* An officer seeking the defendant at his second home stopped the defendant while the defendant was driving and searched the vehicle, recovering evidence. *Id.* This court concluded that the warrant, which did not describe the vehicle with particularity, did "not alter the rule that a search warrant authorizing the search of a building on described premises authorizes the search of other buildings and vehicles on that premises only." *Id.* at *3. However, the Tennessee Supreme Court upheld the search of a vehicle which was initially on the premises but driven away as the warrant was being read. *Reece v. State*, 273 S.W.2d 475, 477 (Tenn. 1954). The court concluded that there was a sufficient "nexus between the departure of this

vehicle from the premises under the stated circumstances and the tracking and locating the same in the mire off an abandoned road." *Id.*

Generally, then, a search conducted pursuant to a warrant for the search of premises but encompassing a vehicle not particularly described in the warrant may be justified when the vehicle is: (1) located on the premises described; and (2) within the possession or control of persons named in the warrant. Accordingly, we must decide whether circumstances surrounding the RV's location and its relationship to the persons named in the warrant suffice to legitimate the search under the warrant for the defendant's premises.

The rule outlined above was articulated by the Tennessee Supreme Court in *Worden v. State*, where the court held that "the building mentioned in the warrant to be searched would include outhouses, vehicles upon the premises, and other places, which are appurtenant to the described building and are under the control of persons named in the warrant." *Worden v. State*, 273 S.W.2d 139, 141 (Tenn. 1954) (concluding that search warrant which authorized search of multiple hotel rooms occupied by persons who were strangers to the process was invalid); *see also Sircy*, 383 S.W.2d at 40 (quoting *Worden*, 273 S.W.2d at 141, for the proposition that the warrant authorizes the search of "'*vehicles upon the premises*, and other places, which are appurtenant to the described building and are *under the control of persons named in the warrant*'" (emphasis in *Sircy*)); *Whited v. State*, 483 S.W.2d 594, 597-98 (Tenn. Crim. App. 1972) (citing *Worden* for the proposition that vehicles upon the premises and under control of persons named in the warrant may be included in the search of the premises under warrant). An appurtenance is defined as "[s]omething that belongs or is attached to something else." Black's Law Dictionary (9th ed. 2009).

We conclude that, although the RV was not parked on the premises, the fact that it was parked in the area immediately beside the home and attached by an electrical cord to the home creates a sufficient nexus to validate the search under the warrant. The RV belonged to the owner of the property, was parked in a private area immediately adjacent to the premises described in the warrant, and was further associated with the premises through the use of an electrical cord tethering the RV to the home. By attaching the RV to the residence, the defendant created a "place[], which [was] appurtenant to the described building and . . . under the control of persons named in the warrant." *Worden*, 273 S.W.2d at 141; *cf. State v. Courtright*, 298 S.E.2d 740, 741, 742-43 (N.C. App. 1983) (concluding that search of vehicle whose tires projected six or seven inches into the yard was valid because the vehicle extended into the curtilage).

### III. Execution of the Warrant

The State argues in the alternative that law enforcement officers acted pursuant to an honest mistake and in an objectively reasonable manner in executing the search warrant. We note that not only must a search be justified under a warrant or an exception to the warrant requirement, but the execution of the warrant must also be reasonable. *See United States v. Kelly*, 772 F.3d 1072, 1082-83 (7th Cir. 2014). This means that officers must "'take steps to reasonably ensure' they are not entering the wrong" premises when they execute the warrant. *United States v. Shaw*, 707 F.3d 666, 668 (6th Cir. 2013). The United States Supreme Court has held that evidence need not be suppressed when officers had an objectively reasonable belief that the search of the premises was authorized by the warrant. *Maryland v. Garrison*, 480 U.S. 79, 88 (1987) (declining to suppress the fruits of a search of a third floor apartment which law enforcement reasonably believed was part of the apartment actually named in the warrant).

Because we conclude that the search of the RV was justified by the warrant, the execution of the warrant to search an area appurtenant to the premises described and under the control of the persons named in the warrant was reasonable in this case. Accordingly, we do not decide whether the defendant's misrepresenting the boundaries of his property or whether the officers' objectively reasonable actions in mistaking the property boundaries are an independent justification of the search. *See Maryland v. Garrison*, 480 U.S. at 87-88; *El Bey v. Roop*, 530 F.3d 407, 416-17 (6th Cir. 2008) (concluding that the defendant's representation that he resides at a particular address is "likely sufficient to create an objectively reasonable belief that he resided there" and to allow the arrest warrant to be executed at the residence); *United States v. Patterson*, 278 F.3d 315, 318 (4th Cir. 2002) (upholding search of a vehicle parked on a gravel area between the home and the street, when the area appeared to be part of the property and was exclusively used by occupants but in fact belonged to the city, and concluding that the search was based on the objectively reasonable belief that the area was encompassed within the warrant); *State v. Brewer*, 640 S.W.2d 33 (Tenn. Crim. App. 1982) (concluding that a search of rural property which uncovered marijuana plants on both the defendants' and a neighbor's premises was executed reasonably under the circumstances because police had a warrant for the defendants' property and the property lines were not distinguishable; alternatively holding that the defendants had no standing to contest the search of the neighbor's property and that the bulk of the marijuana, which was on the defendants' property, was at any rate not subject to suppression); *see also State v. Carter*, 16 S.W.3d 762, 768 n.8 (Tenn. 2000) (noting that Tennessee has not adopted a good faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897 (1984) and declining to address the issue).

## CONCLUSION

Because the RV was appurtenant to the property described in the warrant and under control of a person named in the warrant, we conclude that the search was valid and affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE